# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ME-WUK INDIAN COMMUNITY ) | |
| OF THE WILTON RANCHERIA ) | **CASE NUMBER:**    1:07-CV-00412 |
| 7201 Sunbreeze Lane ) | |
| Sacramento, CA 95828-6263 ) | **JUDGE:**    Hon. Royce C. Lamberth |
| ) | |
| Plaintiff, ) | **DECK TYPE:**    Administrative |
| ) | Agency Review |
| v. ) | |
| ) | **DATE STAMP:** |
| DIRK KEMPTHORNE, ) | |
| in his official capacity as Secretary ) | |
| of the Interior ) | |
| U.S. Department of the Interior ) | |
| 1849 C Street NW ) | |
| Washington, DC 20240-0002 ) | |
| ) | |
| Defendant. ) | |

_____

## DEFENDANT'S MOTION TO TRANSFER VENUE AND TO SUSPEND OBLIGATION TO ANSWER IN THE DISTRICT OF COLUMBIA

Defendant, by and through his undersigned counsel, hereby moves this Court for an Order transferring venue of this case, pursuant to 28 U.S.C. § 1404(a), to the District Court of the Eastern District of California. In support of this Motion, Defendant submits the accompanying Memorandum in Support of Defendant's Motion to Transfer Venue and to Suspend Obligation to Answer in the District of Columbia.

Dated: April 20, 2007.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

/s/ Alex Kriegsman
SARA E. CULLEY (K.S. Bar No. 20898)
ALEX KRIEGSMAN
Trial Attorneys
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

OF COUNSEL:
Scott Keep, Esquire
Assistant Solicitor
Division of Indian Affairs
U.S. Department of the Interior
1849 C Street, N.W.
MS 6456
Washington, D.C. 20240
Tel: (202) 208-6526
Facsimile:  (202) 219-1791

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO TRANSFER VENUE AND TO SUSPEND OBLIGATION TO ANSWER IN THE DISTRICT OF COLUMBIA**

## PRELIMINARY STATEMENT

Plaintiff, located in Sacramento County, California, brings this action seeking declaratory relief. Plaintiff's Complaint asks this Court to direct Defendant to declare Plaintiff a federally recognized Indian tribe and to take certain land into trust for the purported Tribe's benefit. Pl.'s Compl. at ¶ 1. The land Plaintiff seeks to have taken into trust is within a 25-mile radius of the former site of the Wilton Rancheria, which is located in the Eastern District of California. Id. Plaintiff's claims relate to the California Rancheria Act, Pub. L. No. 88-419, 78 Stat. 390. Plaintiff alleges that Defendant failed to properly execute the "Wilton Rancheria Distribution Plan" pursuant to the California Rancheria Act. Because the Eastern District of California is the more appropriate venue for this action, Defendant respectfully moves this Court to transfer venue to that district.

28 U.S.C. § 1404(a) gives district courts discretion to transfer an action to another federal forum when the action may have been brought originally in the other forum and the other forum is more appropriate in light of the convenience of the parties and witnesses and the interests of justice. Such a transfer is appropriate here. Plaintiff is a resident of the Eastern District of California (Pl.'s Compl. at ¶ 1), and the parcel of land at issue is located in the Eastern District of California (Pl.'s Compl. at ¶¶ 9-11). In addition, Plaintiff's Complaint is based primarily on the California Rancheria Act. Pl.'s Compl. at ¶¶ 5, 11-17, 22, 24-26, 32-35, 40, 44-49, 53, 57-60, 62-71. Plaintiff's Complaint is also based, in part, on alleged statements by Bureau of Indian Affairs ("BIA") personnel who are located in California. Id. at ¶ 80-83. On the contrary, the Complaint does not allege any particular connection between this case, or the requested relief,

and the District of Columbia.  Neither Plaintiff, the parcel at issue, or any potential witnesses are

located in Washington, D.C.

## ARGUMENT

I.    **Transfer of this Case to the Eastern District of California Is Appropriate under 28
U.S.C. § 1404.**

28 U.S.C. § 1404(a) affords the Court wide discretion to determine the appropriate venue

of a case based on plaintiff's claims and the issues to be litigated.

> (a) For the convenience of the parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division where it
> might have been brought.

Section 1404(a) is intended to facilitate transfer of actions to a more appropriate federal

forum.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981); Van Dusen v. Barrack, 376

U.S. 612, 616 (1964).  In general, a district court acting pursuant to 28 U.S.C. § 1404(a) may

transfer an action to another federal forum if two requirements are met.  First, as a threshold

matter, the proposed transferee district must be one in which the action might have been brought

originally.  See DeLoach v. Phillip Morris Companies, 132 F. Supp. 2d 22, 24 (D.D.C. 2000).

Second, the Court must then decide, in the exercise of its discretion, whether the transfer is

warranted.  In making the determination whether transfer is warranted, the statute requires the

Court to examine three factors: (1) the convenience of the parties; (2) the convenience of the

witnesses; and (3) the interests of justice.  The Court has "broad discretion" to order transfer

under this standard.  In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983).  See also Norwood v.

Kirkpatrick, 349 U.S. 29 (1955).  An analysis of the Section 1404(a) factors demonstrate that

transfer to the Eastern District of California is appropriate here.

## A.    The Transferee Forum in California Is One Where the Case Could Have Been Brought.

A "threshold consideration" in determining the appropriateness of transfer under § 1404(a) is whether the action "might have been brought" in the transferee district. Nichols v. U.S. Bureau of Prisons, 895 F. Supp. 6, 8 (D.D.C. 1995); see also Van Dusen, 376 U.S. at 616 (transfer power is expressly limited by the clause restricting transfer to those districts in which the action "might have been brought"). This element is certainly satisfied in this case because Plaintiff is a resident of the Eastern District of California and the parcel of land that is identified in Plaintiff's Complaint is situated in the Eastern District of California. 28 U.S.C. § 1391(b) and (e).

## B.    Transfer to the Eastern District of California Is in the Interests of Justice.

This case should be transferred to the Eastern District of California in the interests of justice. "[J]ustice requires that such localized controversies be decided at home." Citizen Advocates for Responsible Expansion (I-Care) v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983) (granting motion to transfer), Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991) (the interest in having local controversies decided locally is compelling); Harris v. Republic Airlines, 699 F. Supp. 961, 963 (D.D.C. 1988) (transfer to District of Minnesota warranted where circumstances giving rise to dispute were centered in Minnesota and there was no nexus between the facts of the case and the District of Columbia). Similarly, the parcel of land giving rise to the present dispute is located in California. In addition, Plaintiff's lawsuit is based, in large part, on the California Rancheria Act. Pl.'s Compl. at ¶¶ 5, 11-17, 22, 24-26, 32-35, 40, 44-49, 53, 57-60, 62-71.

Where a case predominantly implicates interests in another state and the current venue is

one with which the affected citizens have little to no connection, the Court has found the local

interest compelling and ordered transfer.  For example, in <u>Shawnee Tribe v. United States</u>, 298 F.

Supp. 2d 21 (D.D.C. 2002), at issue was whether or not portions of a military reservation,

designated as surplus property by the General Services Administration, were reservation land

subject to transfer to Interior to be held in trust for the Tribe.  The Court decided that the

lawsuit's transfer from the District of Columbia to the United States District Court in Kansas was

appropriate, stating that "the most persuasive factor favoring transfer . . . is the local interest in

deciding a sizable local controversy at home."  <u>Id.</u> at 26.  Central to the Court's opinion was that

judicial allocation of the subject property would directly impact counties and neighborhoods in

that vicinity of Kansas and implicate considerable economic, political, and environmental

interests.  <u>Id.</u>

In <u>Southern Utah Wilderness Alliance v. Norton</u>, 315 F. Supp. 2d 82 (D.D.C. 2004), the

plaintiff sought venue in the District of Columbia of a dispute involving twenty-one parcels of

land in Utah.  There, the Court concluded that National Environmental Policy Act considerations

were localized interests that "directly touch[ed] local citizens."  <u>Id.</u> at 88.  The Court granted the

Government's transfer motion, stating that "[i]t makes sense that these alleged consequences

would be most particularly felt in Utah, and thus that the courts of Utah would have a clear

interest in resolving the dispute."  <u>Id.</u> (citing <u>Trout Unlimited v. United States Department of</u>

<u>Agriculture</u>, 944 F. Supp. 13, 20 (D.D.C. 1996)).  Here, the ramifications and considerations

resulting from review in the District of Columbia would impact California land and citizens and

will not affect land or citizens of the District of Columbia.

It is also appropriate for this Court to consider laws and regulations implicated in this case which are specific in their application to California.  See Shawnee Tribe, 298 F. Supp. 2d at 27; Southern Utah Wilderness Alliance, 315 F. Supp. 2d at 82.  See also  California v. Cabazon Band of Mission Indians, 480 U.S. 202 (1987).  Again, Plaintiff's Complaint is largely based on the California Rancheria Act.  Pl.'s Compl. at ¶¶ 5, 11-17, 22, 24-26, 32-35, 40, 44-49, 53, 57-60, 62-71.  And the California Rancheria Act is a complex statute that has given rise to a considerable amount of litigation.  Much of this litigation has taken place in California.  See e.g., Hardwick v. United States, No. 79-cv-1710, 1994 WL 721578 (N.D. Cal. Dec. 22, 1994); Scotts Valley Band of Pomo Indians, et. al. v. United States, No. 86-c-3660 (N.D. Cal. Dec. 31, 1991) attached as Exhibit E.

## C.    Transfer to the Eastern District of California Will Serve the Convenience of the Parties and Witnesses.

Plaintiff is a resident of the Eastern District of California.  Pl.'s Compl. ¶ 1.  Presumably litigation in the Eastern District of California is decidedly more convenient for Plaintiff.  The United States is fully prepared to litigate this matter in the Eastern District of California.  Furthermore, the state and its political subdivisions may wish to participate in this litigation.  Thus, in regard to the convenience of the parties (and in the interests of justice), transfer of this case to the Eastern District of California is appropriate.

## II.    PLAINTIFF'S CHOICE OF FORUM IS ENTITLED TO LITTLE, IF ANY, DEFERENCE

While the movant bears the burden of demonstrating that transfer is warranted, when a plaintiff chooses a forum that is not its home – as is the case here – the plaintiff's choice of forum is entitled to far less deference than the choice of a home forum.  See Piper Aircraft Co.,

454 U.S. at 255-56; Shawnee Tribe, 298 F. Supp. 2d at 24-25 (The deference that may ordinarily

be due a plaintiff's choice of forum is substantially lessened where suit was brought in the

plaintiff's non-home forum and transfer is sought to the forum where the plaintiff resides.)

 The United States District Court's deference principles in the District of Columbia apply

equally to tribal plaintiffs as they do to any non-Indian plaintiff. See Shawnee Tribe v. United

States, 298 F. Supp. 2d 21, 25 (D.D.C. 2002). See also, e.g., Santee Sioux Tribe of Nebraska v.

National Indian Gaming Commission, Civ. No. 99-528, Slip op. at 6-7 (D.D.C. Apr. 19, 1999)

("[W]here, as here, the plaintiff does not reside in the chosen district, and defendant seeks to

transfer the case to plaintiff's home forum, the traditional deference to a plaintiff's choice of

forum is substantially lessened"), attached as Exhibit A; Cheyenne Arapaho v. Reno, Civ. No.

98-CV-065 (RMU), Slip op. at 3-4 ( D.D.C. Sept. 9, 1998) (plaintiff argued, in opposing transfer,

that the federal agencies involved were both headquartered in Washington, D.C.; "Under

1404(a), the court accords insignificant weight to the location of federal agencies and counsel"

and, "in cases that touch the affairs of many people, there are reasons for holding the trial in their

view and reach rather than in remote parts of the country where they can learn by report only."),

attached as Exhibit B; Mescalero-Apache Tribe v. Janet Reno and Bruce Babbitt, Civ. No. 96-

115, Slip op. at 5 (D.D.C. Feb. 5, 1996) (the court is "is to give [plaintiff's choice of forum]

significantly less deference when plaintiff files a lawsuit in a foreign forum"), attached as Exhibit

C; Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States,

Civ. No. 01-1042, Slip op. at 4, 6 (D.D.C. July 11, 2001) (transferring case to the plaintiff tribe's

home forum in Wisconsin; plaintiff's choice of forum held less weight  "because the plaintiffs

lack any connection to their forum of choice; they do not reside here; and the forum has no

particular connection to the specific matter at hand"), attached as Exhibit D; <u>Rosales v. United States</u>, – F. Supp. 2d –, 2007 WL 809663 (D.D.C. 2007); ("the fact that Plaintiffs chose to file their lawsuit here is entitled to little deference, if any, because they do not reside in the District of Columbia.") (citation omitted).

Based on the foregoing factors, Plaintiff's decision to file the action in the District of Columbia is entitled to little, if any, deference. Plaintiff is located in the Eastern District of California. Furthermore, as discussed above, the subject matter of this litigation is significantly connected to the Eastern District of California. The District of Columbia has no meaningful ties to, or interest in, this litigation. Accordingly, transfer to the Eastern District of California is appropriate.

In concert with Defendant's motion to transfer venue of the case to the Eastern District of California, Defendant also moves this Court to suspend Defendant's obligation to answer the Complaint until thirty days following judicial resolution of the venue issue or at a time to be determined by the transferee court.

<u>**CONCLUSION**</u>

For the reasons set forth above, Defendant's motion for transfer and to suspend answering Plaintiff's Complaint should be granted.

Dated: April 20, 2007.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General

<u>/s/ Alex Kriegsman</u>
SARA E. CULLEY (K.S. Bar No. 20898)

-7-

ALEX KRIEGSMAN
Trial Attorneys
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Facsimile: (202) 305-0267

OF COUNSEL:
Scott Keep, Esquire
Assistant Solicitor
Division of Indian Affairs
U.S. Department of the Interior
1849 C Street, N.W.
MS 6456
Washington, D.C. 20240
Tel: (202) 208-6526
Facsimile:  (202) 219-1791

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SANTEE SIOUX TRIBE OF NEBRASKA,    :
                                   :
                Plaintiff,         :
                                   :
        v.                         :  Civil Action No. 99-528 (GK)
                                   :
NATIONAL INDIAN GAMING COMMISSION, :
                                   :
                Defendant.         :
                                   :

FILED

APR 1 9 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiff, Santee Sioux Tribe of Nebraska ("the Tribe"), has brought suit in this Court challenging the constitutionality of various provisions of the Indian Gaming Regulatory Act ("IGRA" or "the Act"), 25 U.S.C. § 2701-2721 (1994). In addition to seeking a declaratory judgment, the Tribe seeks to enjoin enforcement of a final Order of Closure of the National Indian Gaming Commission ("NIGC or "the Commission") which would close its Ohiya Casino in the State of Nebraska. Defendant, the NIGC, has moved to transfer the case to the United States District Court for the District of Nebraska, where extensive court and appellate proceedings relating to this Casino have already taken place, and where contempt proceedings are ongoing. Plaintiff opposes the transfer.

Upon consideration of Defendant's Motion, Plaintiff's Opposition, Defendant's Reply, the applicable case law, and the entire record herein, for the reasons discussed below, Defendant's

EXHIBIT A

Motion to Transfer is **granted**.

## I.  Statutory Background

In 1988, Congress enacted the Indian Gaming Regulatory Act which was designed to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal government." 25 U.S.C. § 2701(5)(1994).

The Act divides gaming into three categories.  Class III gaming, which is the category at issue in this case, includes banking card games, dice games, roulette, dog racing, horse racing, lotteries, and electronic and electro-mechanical facsimiles of games of chance.  25 U.S.C. § 2703 (6)-(8)(1994).[1]  Under the statute, such Class III gaming activities are lawful on tribal lands only if they are, inter alia, "located in a state that permits such gaming for any purpose by any person, organization, or entity;" and operated in accordance with the provisions of a Tribal-State compact entered into by the Indian tribe and the state in which the tribe is located.  25 U.S.C. § 2710(d)(1)(1994).

When a tribe becomes interested in operating Class III gaming activities, it is required under the statute to initiate the process by requesting the State to enter into negotiations, and the State is required "to negotiate with the Indian tribe in good faith to enter into such a compact".  25 U.S.C. § 2710(d)(3)(A)(1994).

---

[1] The Class III gaming operated by the Tribe consisted of video slot, poker, and blackjack machines.

2

If the State fails to negotiate in good faith, the Act provided that the tribe could sue the State in federal district court; the Act also provided various statutory remedies designed to bring the state and the tribe to a final tribal-state compact so that the tribe could satisfy the requirements of IGRA and conduct lawful gaming activities. 25 U.S.C. §§ 2710(d)(7)(A) and (B)(1994).

In 1997, the Supreme Court ruled that Congress lacked the authority to abrogate a State's Eleventh Amendment immunity from suit and that Section 2710(d)(7)(A) of IGRA was therefore unconstitutional. <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 49 (1996). The practical consequence of this ruling was to leave Indian tribes without recourse to the courts if they were unable, because of bad faith negotiations on the part of the State, to conclude the statutorily required Tribal-State compact. Without the existence of such a Tribal-State compact, the tribes would be unable to obtain permission from the Commission to operate gaming facilities.

II.  Procedural History

Plaintiff is a federally recognized tribe whose reservation is entirely situated within the State of Nebraska. In February 1993, the Tribe began a long period of negotiations with the State of Nebraska to conclude a Tribal-State compact for the conduct of Class III gaming on the Tribe's reservation. Ultimately, the negotiations failed, and there was evidence before the Commission that would "tend to suggest that the Governor did not negotiate in

3

good faith". Pl.'s Ex. 1 at 14.[2]  In February 1996, the Tribe opened its Ohiya Casino, a gaming facility with Class III gaming devices.

In February 1996, the Tribe also filed an action in the U.S. District Court for the District of Nebraska against the State of Nebraska and its Governor, pursuant to IGRA § 2710(d)(7)(A)(i), alleging bad-faith negotiations by the State.  That suit was dismissed on grounds of Eleventh Amendment immunity under Seminole. Santee Sioux Tribe v. State of Nebraska, 121 F.3d 427 (8th Cir. 1997).

Thereafter, the Chairman of the NIGC issued a "Notice of Violation" stating that the Tribe's operation of certain Class III games in the absence of the requisite Tribal-State compact violated 25 U.S.C. § 2710(b).  Despite voicing "serious concerns about the fairness" of the Tribal-State negotiation process, and recognizing the Tribe's critical need for revenues generated by operation of the Casino, the Chairman concluded on May 2, 1996, that the "NIGC does not have the authority to address issues related to the process by which tribal-state compacts are negotiated" and that he had "no choice but to order the closure of the Class III gaming activity presently being conducted". 25 C.F.R. §~573.6(11)(1996). The Tribe closed the Casino on May 5, 1996, only to reinitiate gaming activities several months later.

---

[2]The Commission did not hold, as Plaintiff misrepresents in its papers, "that the evidence demonstrated" that Nebraska failed to negotiate in good faith". Pl.'s Mem. Opposing Def.'s Mot. to Transfer at 3 n1. The Court does not appreciate such a gross exaggeration, not to say misstatement, of the record.

Thereafter, much procedural maneuvering ensued before the Commission and in federal court, the details of which are set out at great length in the parties' papers. Ultimately, after many proceedings before Chief Judge William G. Cambridge of the United States District Court for the District of Nebraska, on appeal, the Eighth Circuit held that the United States could seek civil injunctive relief against the Tribe under Nebraska's nuisance law, pursuant to 18 U.S.C. § 1166. It also ruled that because the gaming machines in question were illegal under Nebraska law and the State could not therefore compact for them even if it chose to negotiate in good faith, that it need not reach the issue of whether all provisions of the IGRA related to compacting are unconstitutional. The Supreme Court denied Plaintiff's petition for a writ of certiorari. <u>United States v. Santee Sioux Tribe of Nebraska</u>, 135 F.3d 558, 565-566 (1998), <u>cert. denied</u>, 119 S. Ct. 48 (1998).

On October 15, 1998, the Eighth Circuit issued a mandate to the District Court to enter an "order enjoining the Tribe's operation of class III gaming devices and enforcing the Chairman's closure order." On November 24, 1998, the District Court issued the mandated order. Plaintiff did not close the Ohiya Casino. On February 1, 1999, the District Court found the Plaintiff in contempt of court for continuing to operate the Casino, and fined it $3000 per day for each day the gaming facility continued to remain open. The Ohiya Casino remains open.

On March 1, 1999, the Tribe filed the present action which it

5

styles as an administrative appeal under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., from the Final Order of the NIGC, seeking a declaration that the law upon which that Final Order is predicated, the IGRA, is unconstitutional.

## III. Analysis

Defendant has moved to transfer this case to the United States District Court for the District of Nebraska under 28 U.S.C. § 1404(a)(1993), which provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Defendant concedes that it bears the burden of establishing that transfer is proper and serves the purposes of § 1404(a) "to prevent the waste `of time, energy and money' and `to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Airline Pilots Ass'n. V. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

A threshold question under § 1404(a) is whether the action may have been brought in Nebraska. The Tribe concedes, as it must, that the case could have been brought in the District of Nebraska.

The Court is well aware that, ordinarily, a plaintiff's choice of forum is entitled to substantial weight and deference. Environmental Crimes Project v. EPA, 928 F. Supp. 1, 2 (D.D.C. 1995). However, where, as here, the Plaintiff does not reside in the chosen jurisdiction, and Defendant seeks to transfer the case

6

to Plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened. <u>Citizen Advocates for Responsible Expansion v. Dole</u>, 561 F. Supp. 1238, 1239 (D.D.C. 1983).

The parties very much dispute whether the convenience of the parties and witnesses will be served by trying this case in the District of Columbia or Nebraska. There is no question that Plaintiff's reservation is located within the District of Nebraska, that all the gaming activities in question are also located there, and that both sides have experienced and knowledgeable counsel in both jurisdictions. Therefore, the Court does not find that the convenience of counsel and parties is a factor that is persuasive one way or the other.

If witnesses are required to testify, then it is clear that the witnesses reside in or near the State of Nebraska and their convenience would be served by litigating the case there. However, Plaintiff maintains that this case is solely an administrative appeal from a final determination of the NIGC pursuant to the APA and, therefore, only the administrative record will be placed in the evidence. On the record as it stands now, this appears to be the case. If so, there would be no inconvenience to Defendant, who is located in Washington, D.C., in litigating the summary judgment motions here rather than in the District Court in Nebraska.

However, there are three compelling reasons which fully justify transferring the case to the District Court in Nebraska.

First, the Defendant is correct that the interests of justice

7

will best be served by transferring the case to the District Court
in Nebraska.   As the Supreme Court explained in applying the
doctrine of forum non conveniens in Gulf Oil v. Gilbert, 330 U.S.
501, 509 (1947):

> In cases which touch the affairs of many persons, there
> is reason for holding the trial [or motions hearing] in
> their view and reach rather than in remote parts of the
> country where they can learn of it by report only.   There
> is a local interest in having localized controversies
> decided at home.

While there is some truth to Plaintiff's argument that in this
day of computers and virtually instantaneous communications,
Gilbert is far less persuasive than it was fifty years ago.
However, the federal courts do not allow cameras or tape recorders
in courtrooms, there is intense local interest in this controversy,
and there is a significant benefit to allowing those whose lives
will be most immediately affected by the outcome of litigation, as
well as the local media, to physically attend the proceedings which
will determine that outcome.   There is no substitute for personally
observing, watching and evaluating the judge who presides, hearing
the quality of the arguments, and getting a first-hand impression
of whether the proceeding is being handled with the appropriate
fairness and seriousness.   Furthermore, the members of this
District Court have repeatedly honored this principle by
transferring cases involving Indian gaming controversies back to
the state in which the controversy and the gaming were located.
See Towns of Ledyard, N. Stonington, and Preston, Conn. v. United
States, Civ. No. 95-0880, slip op. at 4-5 (D.D.C. May 31, 1995);
Apache Tribe of the Mescalero Reservation v. Reno, Civ. No. 96-115,

8

[7

slip op. (D.D.C. Feb. 5, 1996); <u>Cheyenne-Arapaho Tribe of Okla. v.</u>
<u>Reno</u>, Civ. No. 98-065, slip op. (D.D.C. Sept. 8, 1998); and <u>Citizen</u>
<u>Advocates for Responsible Expansion, Inc. v. Dole</u>, 561 F. Supp.
1238, 1240 (D.D.C. 1983).

Second, transfer of this case will avoid the waste of judicial
resources and the very real possibility of inconsistent results.
There is no question that Chief Judge Cambridge, who has presided
over this litigation for close to three years, is intimately
familiar with the facts, the extensive procedural history, and the
applicable law.  Obviously, it would be a waste of the parties'
time and energy as well as of precious judicial resources to
litigate a closely related case before a newly assigned judge, as
opposed to Chief Judge Cambridge.

Third, and most persuasive of all, it is perfectly clear that
Plaintiff is attempting to forum-shop and avoid the consequences of
having lost its case before the Eighth Circuit after having raised
the same Constitutional arguments which it raises here.  That court
squarely rejected these arguments:

> The Tribe argues that because of the Supreme Court's
> determination in <u>Seminole Tribe</u> that, Congress was not
> empowered to authorize lawsuits by Indian tribes against
> states that fail to negotiate in good faith for a tribal-
> state compact, all provisions of the IGRA are
> unconstitutional.  We decline to address this argument
> given our conclusion that, under the IGRA, the State is
> not required to negotiate for gambling that is illegal
> under Nebraska law. . . .  As we already have determined,
> the class III gambling activities in which the Tribe is
> engaged are illegal under Nebraska law, ruling out any
> duty on the part of the State to negotiate a compact with
> the Tribe for such gambling.  <u>United States v. Santee</u>
> <u>Sioux Tribe of Nebraska</u>, 135 F.2d at 565-566.

Thus, Plaintiff is asking this Court to render a ruling which would squarely conflict with the ruling of the Eighth Circuit. That was not the intent of the drafters of Section 1404(a):

> The transfer provisions in the U.S. Code, which grew out of the common law doctrine of forum non conveniens, were in part intended to prevent forum shopping. Cheeseman v. Carey, 485 F. Supp. 203, 214-214 (S.D.N.Y. 1980). This Court cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case. Schmid Lab., Inc. v. Hartford Accident and Indem. Co., 654 F. Supp. 734, 737 (D.D.C. 1986).

For all the foregoing reasons, the Defendant's Motion to Transfer is granted.


_April 16, 1999_
Date

_Gladys Kessler_
Gladys Kessler
United States District Court Judge

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP - 9 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

CHEYENNE-ARAPAHO TRIBE
OF OKLAHOMA,
ET AL.,

        Plaintiffs,

        v.

JANET RENO, ATTORNEY GENERAL
OF THE UNITED STATES,
DEPARTMENT OF JUSTICE,
ET AL.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No.:98-CV-065 (RMU)

Document Nos.: 2, 6, 15, 17, 18, 19, 21
28, 31 & 32

## O R D E R

### Granting The Defendants' Motion to Transfer

    This matter comes before the court on the defendants' motion to transfer this action to the United States District Court for the Northern District of Oklahoma. Upon consideration of the parties' submissions and the entire record, the court grants the defendants' motion to transfer. The convenience of the parties and potential witnesses in addition to the interests of justice dictate that the action be litigated in Oklahoma.

### I. BACKGROUND

    The plaintiffs[1] reside in the state of Oklahoma and operate gambling casinos on Indian lands. The plaintiffs operate various types of gambling devices including the MegaMania machine, which is the subject of the present action. On December 30, 1997, the United States

---

[1]    The plaintiffs in this case include the Cheyene-Arapaho Tribe of Oklahoma Gaming Commission, which filed suit on behalf of the Cheyene-Arapaho Tribe of Oklahoma, the Chickasaw Nation of Oklahoma, and The Choctaw Nation of Oklahoma.

(N /

**EXHIBIT B**

Attorney for the Northern District of Oklahoma ("U.S. Attorney") obtained warrants to seize approximately 285 MegaMania gambling devices and related equipment located on Indian lands in the Northern and Eastern Districts of Oklahoma. The next day, the U.S. Attorney filed a complaint for forfeiture *in rem* against the plaintiffs ("the Enforcement Action") to seize the MegaMania gambling devices and related equipment. The seizure of the equipment was spurred by a finding by Senior District Judge H. Dale Cook and Magistrate Judge Payne in the Northern District of Oklahoma that there is probable cause to believe that the MegaMania machine is an illegal class III gambling device under the Johnson Act, 15 U.S.C. §§ 1171-1178.

On January 5, 1998, Multimedia, the maker of the MegaMania machine, and the Seneca-Cayuga Tribe of Oklahoma filed an action in the U.S. District Court for the Northern District of Oklahoma ("Oklahoma Action") seeking: (1) declaratory judgment that the MegaMania is a permissible Class II gaming device; and (2) a stay of enforcement activity during the pendency of the lawsuit. Subsequently, on January 12, 1998, the plaintiffs filed a declaratory judgment action in this court ("D.C. Action") requesting similar relief as in the Oklahoma Action. Then, on January 15, 1998, Judge Kern consolidated the Oklahoma action into the Enforcement Action. At present, the defendants seek to transfer this action to the Northern District of Oklahoma claiming that the profound public interest in Oklahoma regarding the classification of the MegaMania machine, the convenience of the parties and witnesses, and the interests of justice warrant such a transfer.

## II. DISCUSSION

The defendants seek to transfer this case to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a), which provides that a district court may transfer any civil action to any other district or division where it may have been brought for the convenience of the parties and witnesses and for the interests of justice. The defendants bear the burden of establishing that the transfer of the action is proper. See Airline Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987). Section 1404(a) vests the court broad discretion to adjudicate motions to transfer on a case-by-case basis. See Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). Thus, a threshold determination under § 1404(a) is whether the action may have been brought in Oklahoma.

2

The venue statute, 28 U.S.C. § 1391(e), states that venue is proper in the judicial district in which a substantial part of the events giving rise to the claim occurred, or where a substantial part of property that is the subject of the action is situated. Here, venue could be proper in Oklahoma because the case involves governmental action that will impact the tribe's gambling operation in that state. See Martin-Trigona v. Meister, 668 F. Supp. 1, 4 (D.D.C. 1987). Furthermore, the events giving rise to this controversy occurred in Oklahoma and the property affected is also located there. Thus, under § 1391, venue is proper in the Northern District of Oklahoma.

Next, the court determines whether the case should be transferred based on the convenience of the parties and witnesses and the interests of justice. Of course, deference should be given to the plaintiffs' choice of forum. See Air Line Pilots Ass'n, 672 F. Supp. at 526. The court, however, may give the plaintiffs' choice of forum significantly less deference if the activities surrounding the controversy have little, if any, contact with the selected forum. See Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991); see also Martin-Trigona, 668 F. Supp. at 3. In the instant case, the plaintiffs are citizens domiciled in the State of Oklahoma and the MegaMania machines at issue are similarly located in Oklahoma. The Multimedia corporation, the maker of the MegaMania devices, has its headquarters in Tulsa, Oklahoma. All the individuals associated with the MegaMania machines and the records pertaining thereto are located in Oklahoma. The U.S. Attorney's office that filed the enforcement action is also located in Oklahoma. Moreover, a consolidated case with identical issues as the present action is currently pending in the Northern District of Oklahoma. Thus, these facts compel a determination that a transfer of venue is appropriate.

The plaintiffs, however, argue that this case should be litigated in this jurisdiction because the U.S. Department of Justice ("DOJ") and the National Indian Gaming Commission ("NIGC"), the government agency charged with regulating Indian gaming, both have their headquarters in Washington, D.C. This argument is unpersuasive. Under § 1404(a), the court accords insignificant, if any weight, to the location of federal agencies and counsel. See e.g., Armco Steel Co., 790 F. Supp. at 324. The significance here is the location of potential non-party witnesses and the events that form the basis of this controversy, the majority of which are located in

3

Oklahoma. Therefore, for the convenience of the parties and the potential witnesses, this action should be transferred to Oklahoma.

The court further concludes that the interests of justice favor the transfer of this case to Oklahoma. The interests of justice are furthered by avoiding unnecessary expense to the public through duplicative use of judicial resources. See Continental Grain Co. v. Barge, FBL-585, 364 U.S. 19, 26 (1960). See Also Martin-Trigona, 668 F. Supp. at 3 (the interests of justice are better served when a case is transferred to the district where related actions are pending). As mentioned above, a consolidated action involving the same issues in the present action, the classification of the MegaMania machines, is currently pending in the Northern District of Oklahoma. The DOJ is a party in both the present action and in the current litigation in Oklahoma. Therefore, this action must be transferred to the Northern District of Oklahoma in order to avoid inconsistent judgments or duplicative litigation.

In addition, the interests of justice are promoted when a localized controversy is resolved locally where concerned citizens may closely follow the proceedings. See Citizen Advocates For Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983). In cases that touch the affairs of many people, there are reasons for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. See Gulf Oil v. Gilbert, 330 U.S. 501, 509 (1947). The issues surrounding the classification of the MegaMania machines affect Indian tribes that operate casinos and companies that manufacture gambling devices within the state. Therefore, it is clear that the interests of justice will be better served if the resolution of this case occurs in Oklahoma.

Next, the plaintiffs argue that if the case is litigated in this jurisdiction, where the DOJ has its national headquarters, the DOJ will be bound by the judgment nationwide. This argument is meritless. Under the doctrine of offensive and defensive collateral estoppel, both parties are bound by the final judgment of a case regardless of where the case is tried. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979). Therefore, both parties are estopped from resurrecting identical issues in another jurisdiction. See id. In fact, contrary to the plaintiffs' assertion, as discussed above, the interests of justice are better served if the action is litigated in Oklahoma.

4

Finally, the plaintiffs argue that it would serve the interests of justice to litigate the action before this court because the court has familiarity with the MegaMania gaming device. This argument is similarly without merit. Although the court had exposure to the MegaMania device when it entertained evidentiary presentations in <u>Diamond Game Enterprises v. Janet Reno</u>, - - F. Supp. --, 1998 WL 345041 (D.D.C. June 23, 1998), the court may require additional evidentiary and oral hearings to fashion an informed opinion on the classification of the MegaMania device. Furthermore, the plaintiffs fail to explain why another federal judge in Oklahoma would be unable to determine the classification of the MegaMania gaming device even when that judge does not have previous knowledge of the device. In short, the court finds that the plaintiffs fail to demonstrate the interests of justice are better served by litigating this action in the District of Columbia. Therefore, the court transfers the above-captioned action to the U.S. District Court for the Northern District of Oklahoma.

Accordingly, it is this __8th__ day of September, 1998,

ORDERED that the defendants' motion to transfer the above-captioned action to the U.S. District Court for the District of Oklahoma be and is hereby **GRANTED**; it is

FURTHER ORDERED that the defendants' motion for leave to file a supplement to the motion to transfer be and is hereby **GRANTED** <u>nunc pro tunc</u>; it is

ORDERED that the defendants' motion for leave to file amended reply in support of defendants' motion to transfer be and is hereby **GRANTED** <u>nunc pro tunc</u>; it is

FURTHER ORDERED that the motion to intervene filed by Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation ("the Viejas Group") be and is hereby **DENIED** without prejudice. The Viejas Group may resurrect its motion to intervene consistent with the order of the transferee court; it is

ORDERED that the Viejas Group's motion for leave to file plaintiffs' supplemental opposition to defendants' motion to dismiss be and is hereby **DENIED** without prejudice; it is

FURTHER ORDERED that the motion to intervene filed by the Cabazon Band of Mission be and is hereby **DENIED** without prejudice. The Cabazon Band may resurrect its motion to intervene consistent without the order of the transferee court; it is

**ORDERED** that the motion to intervene filed by Shoalwater Indian Tribe be and is hereby **DENIED** without prejudice. The Shoalwater Indian Tribe may resurrect its motion to intervene consistent with the order of the transferred court; it is

**FURTHER ORDERED** that the Shoalwater Indian Tribe's motion for leave to file memorandum in opposition to defendant's motion to transfer be and is hereby **DENIED** without prejudice; it is

**ORDERED** that the defendants' motion to stay proceedings be and is hereby **DENIED** as moot; and it is

**FURTHER ORDERED** that the defendants' motion for a protective order be and is hereby **DENIED** without prejudice. The defendants' may resurrect this motion with the transferee court.

**SO ORDERED**.

Ricardo M. Urbina
United States District Judge

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The Apache Tribe of the Mescalero Reservation, | : | |
| Plaintiff, | : | Civil Action No.: 96-115 |
| | : | |
| v. | : | |
| | : | |
| Janet Reno, Attorney General, Bruce Babbitt, Secretary of the Interior, Defendants. | : | Document No.: |

Order

**Denying Plaintiff's Motion for a Temporary Restraining Order and Granting Defendants' Motion to Transfer**

This matter comes before the court upon plaintiff's motion for a temporary restraining order and defendants' opposition thereto; defendants' motion to transfer this action to the United States District Court for the District of New Mexico; and plaintiff's opposition thereto. After careful consideration of the pleadings and the entire record herein, the court concludes that a temporary restraining order shall not be imposed because the movant has failed to establish that it will suffer irreparable injury; or that the public interest will be furthered by the granting of injunctive relief. Accordingly, plaintiff's motion for a temporary restraining order is denied.

In addition, the court concludes that defendants' motion to transfer shall be granted because the present action could have been brought in New Mexico and the interests of the parties and of potential witnesses; as well as the interest of justice dictate that the action be heard in that forum.

**EXHIBIT C**

1

## I. Background

Plaintiff, the Apache Tribe of the Mescalero Reservation ("Tribe"), resides in the state of New Mexico. The tribe operates the Casino Apache, a gambling enterprise located within the reservation. The Tribe owns and operates various types of gambling equipment. The casino and the gambling equipment are the subject of the present action. According to the tribe it is legally conducting gambling activities pursuant to a compact, it and other tribes reached with the Governor of New Mexico, Gary Johnson and subsequently approved by the Secretary of the Interior. This compact, however, was found to have no legal effect as a matter of state law by the New Mexico Supreme Court. State ex rel. Clark v. Johnson, 904 P.2d 11 (1995). That Court also found that all electronic gaming devices, slot machines and casino-style gaming are unlawful in the state of New Mexico. Citation Bingo, Ltd. v. Otten, No. 22,736 (N.M. Nov. 29, 1005). As a result, in December 1995, the United States Attorney for the District of New Mexico, advised ten New Mexico Tribes, that the gambling activities they were conducting were illegal in the state of New Mexico and were not the proper subject of a compact and thus in violation of federal criminal law.

The United States Attorney then advised the tribes, including plaintiff, that if they did not cease their gambling operations withing thirty days, complaints in civil forfeiture would be filed against them. As a result, nine of the tribes filed suit in New Mexico against the present defendants as well as the United States Attorney for the District of New Mexico and the United States. The parties in that suit reached a stipulation in which the Tribes agreed to close their casinos if the court in New Mexico found their enterprises to be illegal. The United States Attorney agreed not to initiate any criminal proceedings or forfeiture actions against the Tribes. Plaintiff, however, is not a party to the suit pending in New Mexico; it decided to proceed in this jurisdiction.

Plaintiff requests that the court issue a temporary restraining order that would prevent the defendants from taking any action which might interfere with plaintiff's gambling operation, including, but not limited to, the institution of any civil action to enjoin or to declare unlawful the Tribe's operation or to cause a forfeiture of any gambling device utilized in said operation.

2

Furthermore, the Tribe seeks to prevent the initiation of any criminal prosecution of any person associated with the Casino Apache.

## II. Discussion

### A. Temporary Restraining Order

A party seeking a temporary restraining order must establish that: (1) it has a substantial likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be furthered by the injunction. Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C.Cir. 1989); see also Foundation on Economic Trends v. Heckler, 756 F.2d 143, 151 (D.C.Cir. 1985); Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977). After balancing the four factors, the court concludes that plaintiff has failed to establish that it will suffer irreparable harm if injunctive relief is not granted; or that the public interest will be furthered by the issuance of the temporary restraining order. The court finds it unnecessary to make explicit findings with respect to the other two elements since irreparable harm and the furtherance of a public interest have not been sufficiently established. The court notes, however, the substantial difficulty the plaintiff must overcome in order to succeed on the underlying merits of this case.

In order to establish irreparable harm justifying injunctive relief, a plaintiff must establish injury that is certain, great, and actual, not theoretical. Wisconsin Gas Co. v. Federal Energy Regulatory Commissions, 758 F.2d 669, 674 (D.C.Cir. 1985). The injury must be imminent, creating a "clear and present" need for equitable relief to prevent irreparable harm. Id. (internal citations omitted). Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time." Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931). Plaintiff must establish that the irreparable injury is likely to occur. The movant must therefore provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future. Wisconsin Gas. Co., 758

3

F.2d at 674. Finally, the plaintiff must show that the alleged harm will directly result from the action which he or she seeks to enjoin. Id. Plaintiff has not made the requisite showing.

It is clear from the pleadings submitted by the parties for the court's consideration that the only threatened action is the filing of a civil forfeiture complaint by the government. Thus, plaintiff's reference to the United States Attorney's intention to close the casino and to seek forfeiture of the Tribe's gambling devices is not dispositive since it must be evaluated in light of the fact that in order to carry out the threatened action, the government would have to avail itself of civil forfeiture procedures. There are adequate remedies in civil forfeiture of which the plaintiff can avail itself. "The basis for injunctive relief in the federal courts has always been irreparable harm *and* inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88 (1974) (emphasis supplied). Moreover, the United States Attorney in New Mexico does not intend the immediate seizure of any gambling equipment machines.[1] Further, the defendants have represented in the pleadings that they do not intend to interfere in any way with the casino's operations prior to the entry of a judgment of forfeiture in the District of New Mexico. Consequently, the court fails to see any imminent and irreparable harm to the interests of the Tribe. Finally, since the court is granting defendant's motion to transfer this action to the United States District Court for the District of New Mexico, plaintiff is free to seek injunctive relief in that forum.[2]

---

[1]   Plaintiff requests that the court enjoin the defendants from instituting any criminal proceedings against any individual associated with Casino Apache. This is not an appropriate subject for the court to entertain. Newman v. United States, 382 F.2d 479, 480 (D.C.Cir. 1967); see also Shoshone-Bannok Tirbes v. Reno, 56 F.3d 1476, 1480 (D.C.Cir. 1995). Moreover, it is unlikely that any such proceedings will go forward prior to the court in New Mexico resolving the issue of the legality of the gambling operations.

[2]   Plaintiff's argument regarding the public interest is premised on its position vis-a-vis the alleged irreparable harm that is to occur if injunctive relief is not granted. Consequently, the court does not credit it for the same reasons that plaintiff's position on the irreparable harm prong of the standard for the granting of a temporary restraining order fails.

4

## B. Transfer

The defendants seek to transfer this case to the state of New Mexico pursuant to 28 U.S.C. § 1404 (a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The defendants bear the burden of establishing that the transfer of this action is proper. Airline Pilots Ass'n v. Eastern Air Lines, 672 F.Supp. 525, 526 (D.D.C. 1987); Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., 621 F.Supp. 906, 907 (D.D.C. 1985). Section 1404 (a) vests "discretion in the district court to adjudicate motions to transfer according to 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organizations, Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The threshold determination under § 1404 (a) is whether the action might have been brought in New Mexico.

Plaintiff bases its claims on federal question jurisdiction, and venue is proper in New Mexico because the case involves governmental action that will impact the Tribe's gambling operation which is located there. See Martin-Trigona v. Meister, 668 F.Supp. 1, 4 (D.D.C. 1987). The venue statute, 28 U.S.C. § 1391 (e), holds that venue is proper in the "judicial district in which...a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." It is clear that the events giving rise to the claim have occurred in New Mexico and that the property being affected is similarly located there.

Accordingly, the court's inquiry proceeds to the issue of whether the case should be transferred based on the convenience of the parties, the convenience of the witnesses, and the interest of justice. The court is aware of the deference that should be given to plaintiff's choice of forum. Air Line Pilots Ass'n, 672 F.Supp. at 526 (internal citations omitted). However, the court is to give this factor significantly less deference when plaintiff files a law suit in a foreign forum, as plaintiff itself concedes. Martin-Trigona, 668 F.Supp. at 3. Plaintiff and its gambling

5

operation are located in New Mexico. All the individuals associated with the casino and the records pertaining thereto are located in New Mexico; the United States Attorney who is investigating the casino is also located there and any civil forfeiture actions will be brought in that jurisdiction. Plaintiff's reference to the fact that its lead counsel is located in the District of Columbia is immaterial. Under § 1404 (a), the court accords insignificant, if any, weight to the location of counsel. Armco Steel Co., L.P. v. CSX Corp., 790 F.Supp. 311, 324 (D.D.C. 1991). Consequently, for the convenience of the parties and the potential witnesses, this action should be transferred to New Mexico.

The court further concludes that the interest of justice favors the transfer of this case to New Mexico. As previously referenced above, an action is currently pending in New Mexico which involves the same issues of law as this action; the fundamental issue being the legality of casino gambling in New Mexico and the concomitant ability of ten Indian tribes to conduct gambling operations in that state.[3] The action in New Mexico involves the same defendants as those in this case. In addition, the two actions present similar factual backgrounds, claims and requests for relief. "A prime factor to be considered is whether the issues in both actions are substantially the same and whether their determination rests upon the same factual matters." National Union Fire Ins. v. R.H. Weber Exploration, 605 F.Supp. 1299, 1303 (S.D.N.Y. 1985). Further, any forfeiture proceeding, which plaintiff presently seeks to enjoin, would be undertaken by the prosecutorial authorities in New Mexico. Finally, the resolution of this dispute will involve, to a large extent, the interpretation of the law of New Mexico. Accordingly, if this case was transferred to New Mexico, it could be consolidated with the one currently pending there, thereby saving judicial resources and costs. See Continental Grain Co. v. FBI-585, 364 U.S. 19,

---

[3]    The plaintiff points out that in the case pending in New Mexico the plaintiff Tribes and the government entered into a stipulation that would prevent the latter from engaging in any action which would impede the operation of the plaintiffs' operations. Plaintiff refused to enter into this stipulation at its own prerogative. Accordingly, plaintiff's strategic decision to not enter into the agreement cannot serve as a basis for preventing the transfer of the case. Had it entered into the agreement, plaintiff would have been accorded exactly the same relief it now seeks in this jurisdiction.

6

26 (1960). Consolidation would also avoid the possibility of inconsistent results.

Moreover, the resolution of this controversy, which both sides acknowledge involve

issues very important to the local community, will have an exclusively local effect. Thus,

> in cases which touch the affairs of many persons, there is reason for holding the
> trial in their view and reach rather than in remote parts of the country where they
> can learn of it by report only. There is a local interest in having localized
> controversies decided at home.

Gulf Oil v. Gilbert, 330 U.S. 501, 509 (1947). The parties have both represented that the issues

of gambling in New Mexico has produced intense interest among the people of that state. The

citizens of New Mexico will be in a better position to observe the course of litigation which will

intimately affect them at a more proximate and convenient forum.

Accordingly, it is this ___ of February 1996,

**ORDERED** that plaintiff's motion for a temporary restraining order be and is hereby

denied; and it is

**FURTHER ORDERED** that defendants' motion to transfer this action to the United

States District Court for the District of New Mexico be and is hereby **granted**.

SO ORDERED.

Ricardo M. Urbina
United States District Judge

Copies Sent To:

Phyllis A. Dow
AUSA
P.O. Box 607
Albuquerque, New Mexico 87103

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAC COURTE OREILLES BAND OF
LAKE SUPERIOR CHIPPEWA
INDIANS OF WISCONSIN, *et al.*,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil Action No. 01-1042
HHK/DAR

**FILED**

**AUG 1 6 2002**

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM ORDER

    This matter was referred to the undersigned for determination of federal defendants' and

the State of Wisconsin and Governor Scott McCallum's Motions to Transfer (Docket Nos. 8 and

9). Plaintiffs filed their opposition (Docket No. 12) and replies in support of the motions to

transfer were filed by the federal defendants (Docket No. 19) and by the State of Wisconsin and

Governor Scott McCallum (Docket Nos. 17, 18). After consideration of the motions, the

opposition and the replies thereto, and of the relevant case law, the undersigned will grant the

motions to transfer.

## INTRODUCTION

    Plaintiffs, three Wisconsin Indian tribes ("Wisconsin Tribes"), filed the instant action in

this Court for a declaratory judgment that the gubernatorial concurrence requirement in

§20(b)(1)(A) of the Indian Gaming Regulatory Act, 25 U.S.C. §2719(b)(1)(A), is

unconstitutional and a breach of trust by Congress, and seek a remand to the Secretary of the

Interior requiring her to complete the trust application for the Wisconsin Tribes. This

controversy stems from the administrative process used by the State of Wisconsin in deciding

whether certain Indian tribes could open a casino on trust land in the state. In 1993, the

Wisconsin Tribes submitted to the Bureau of Indian Affairs-Midwest Regional Office, an

**EXHIBIT D**

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                    2

application for the acquisition and fee-to-trust transfer of the St. Croix Meadows Racing Facility
located in Hudson, St. Croix County, Wisconsin. Defendant's Motion to Transfer at 3. The
Midwest Regional Office reviewed the application and submitted a favorable recommendation to
the BIA-Central Office on November 15, 1994. On July 14, 1995, the Deputy Assistant
Secretary-Indian Affairs ("Deputy AS-IA") determined that the proposed gaming establishment
would be detrimental to the surrounding community and raised additional concerns about the
potential impact on the environment. Id. at 4. As a result, the Deputy AS-IA declined to exercise
his discretion to take the land into trust. Id.

On September 15, 1995, the Wisconsin Tribes filed suit in the United States District
Court for the Western District of Wisconsin challenging the Department's denial. In December,
1999, the parties entered a settlement agreement in which the court retained jurisdiction over the
enforcement of the settlement. Id. at 5. Also in 1995, the Department agreed to vacate the denial
of the application and resume consideration of the Wisconsin Tribes application. On January 25,
2001, the Deputy Commissioner of Indian Affairs for the BIA transmitted a favorable
recommendation on Wisconsin Tribes' application to the Assistant Secretary of Indian Affairs.
On February 20, 2001, the acting AS-IA issued a two-part determination and findings of fact
which included the finding that the proposed gaming establishment was in the best interests of
the Wisconsin Tribes and their members and not detrimental to the surrounding community. The
acting AS-IA sought the concurrence of the Governor of Wisconsin ("Governor"); however, the
Governor has since refused to concur in the determination. Id. at 6.

For the purposes of deciding the instant motions, it is not necessary to go into great detail
about the intersection of the two statutes, 25 U.S.C. § 465 and §20 of 25 U.S.C. § 2719, that are
at the heart of this constitutional challenge. The applicable administrative procedure requires
that the Tribes obtain the concurrence of both the Secretary and the Governor of the Wisconsin in

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                    3

order to construct a casino. The Wisconsin Tribes argue that the concurrence requirement is unconstitutional.

The federal defendants request a transfer on the grounds that the Western District of Wisconsin is a forum in which this action could have been brought; that convenience to the parties and witnesses would be served by transferring the case; and that the interests of justice would be served by avoiding the waste of judicial resources and the possibility of conflicting results; and the specific claims brought here are of a local nature. See Federal Defendants' Motion to Transfer at 7, 8, 10-13.

The State of Wisconsin and Governor Scott McCallum have also requested that this action be transferred to the Western District of Wisconsin. Their arguments are virtually identical to those asserted by the federal defendants. They argue that the case could have been brought in the Wisconsin; that plaintiffs' case has no nexus to the District of Columbia; that the Western District of Wisconsin is convenient for the parties and the potential witnesses; and that this controversy has a compelling local interest. See Memorandum in Support of Motion to Transfer by the State of Wisconsin and Governor Scott McCallum at 8-10, 15.

Plaintiffs, in their opposition, contend that this suit is merely a facial challenge to a statutory provision having national application; that it will require no witnesses, evidence, or trial; and that this circuit has a unique familiarity with the legal issues at hand. See Plaintiffs' Opposition to Motions to Transfer ("Opposition") at 1-2.

Both the federal defendants, and the State of Wisconsin and Governor Scott McCallum, filed replies in support of the motions to transfer in which they argue that the impact of this case is local in nature; the choice of forum by plaintiffs should be afforded little deference; this district is no more capable of resolving this dispute than the Western District of Wisconsin; and the inconvenience of the Wisconsin defendants of litigating this case in the District of Columbia

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                          4

is much greater than that of the federal defendants who have already requested a transfer. See

Reply Memorandum in Support of Federal Defendants' Motion to Transfer at 1, 3 and 6; Reply

Memorandum in Support of Motion to Transfer by the State of Wisconsin and Governor Scott

McCallum at 1-2.

## DISCUSSION

A district court may transfer any civil action to any other district or division where the

action may have been brought if the transfer serves the convenience of the parties and witnesses,

and is in the interests of justice. See 28 U.S.C. §1401(a). The moving party bears a heavy

burden of establishing that plaintiff's choice of forum is inappropriate. Thayer/Patricof

Education Funding v. Pryor Resources, Inc., 196 F.Supp.2d 21, 31 (D.D.C. 2002). Additionally,

a court has broad discretion to determine where the proper balance lies and whether a case should

be transferred. Id. (citing Rhee Bros., Inc. v. Seoul Shik Poom, Inc., 869 F.Supp. 31, 33-34

(D.D.C. 1994)). Normally, the plaintiff's choice of forum is a paramount consideration in any

determination of a transfer request. Sheraton Operating Corp. v. Just Corporate Travel, 984

F.Supp. 22, 25 (D.D.C. 1997). However, the choice of forum is not afforded great deference

when the plaintiff is a foreigner to that forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-

256 (1981); see also Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr., 24 F.Supp.2d 66, 71

(D.D.C. 1998).

The parties do not dispute that the Western District of Wisconsin, the location of the land

at issue in this constitutional challenge, is a proper forum for the suit to be brought.

Consequently, the initial requisite in a motion to transfer is satisfied. 28 U.S.C. §1401(a). The

next two considerations require this court assess whether the transfer would serve the

convenience of the parties and witnesses and the interests of justice. Id. In making those

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                        5

assessments, courts in this circuit may consider a number of public and private interests

including: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in

favor of the defendants; (2) the defendant's choice of forum; (3) whether the claims arose

elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to

the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the ease

of access to sources of proof; (7) the transferee's familiarity with the governing laws; (8) the

relative congestion of the calendars of the potential transferee and transferor courts; and (9) the

local interest in deciding local controversies at home. Shapiro, 24 F.Supp. at 71 (citing Trout

Unlimited v. Dep't of Agric., 944 F.Supp. 13, 16 (D.D.C. 1996)).

    The consideration of the convenience to the parties and witnesses and the availability of

evidence does not yield a strong preference for either district. While it is true, as defendants

observe, that plaintiffs' home forum is in the State of Wisconsin, it also appears true, at this point

in the litigation, that there will be few, if any, witnesses to be called and little evidence to be

offered. Since the plaintiffs have chosen the District of Columbia, then their convenience is not

an issue. Since the federal defendants have offices within this district, they cannot reasonably

assert that this district is overly inconvenient for them. The State of Wisconsin and the Governor

will be inconvenienced to some extent if argument is required in this case. However, this

inconvenience is somewhat mitigated by their decision to intervene in this matter which had

already been filed in this district, and the likelihood that the case will be decided through written

motions and limited oral argument. Consequently, the convenience of the parties and witnesses,

and the availability of evidence, are not controlling considerations. However, the undersigned

must also take into account that if any witnesses are needed, those few witnesses are located in

Wisconsin.

| Post-It™ brand fax transmittal memo 7671 | | # of pages ► | 1 |
|---|---|---|---|
| To Ed Passarell: | From John Greene | | |
| Co. | Co. | | |
| Dept. | Phone # | | |
| Fax # 202/305-0506 | Fax # 608/266-2250 | | |

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                      6

The final consideration requires the court to assess the issue of whether the transfer is in "the interests of justice." This concept gives all parties the opportunity to argue the relative benefits of having this litigation proceed in their forum of choice. 28 U.S.C. §1401(a). As previously discussed, it is the practice of the courts to grant great deference to the decision of the plaintiffs in their forum choice. This deference, however, holds less weight in this instance because the plaintiffs lack any connection to their forum of choice; they do not reside here; and the forum has no particular connection to the specific matter at hand. See Greater Yellowstone Coalition v. Bosworth, 180 F.Supp.2d 124, 128 (D.D.C. 2001)(citations omitted). Plaintiffs discuss at length the national significance of the claims presented here; however, federal jurisdiction is limited to cases and controversies, and this case concerns Indian tribes from Wisconsin claiming that the Governor of Wisconsin yields constitutionally impermissible power in deciding what development is permissible on land within the State of Wisconsin. The only connection to this forum happens to be that the law was passed by the United States Congress. This connection, however, is too attenuated to be given any meaningful effect; the consequence would be that all challenges to federal statutes would eventually be brought in the District of Columbia, because that is where the federal laws are passed. This result is clearly untenable.

Having discussed the shortcomings in the traditional analysis of deferring to the choice of the plaintiffs, the Court must also consider whether any considerations counsel for transfer. As has been previously discussed, convenience does not seem to be a persuasive issue; however, since all of the parties either reside in or have offices in the State of Wisconsin, a transfer may be somewhat more convenient. Next, the public interest in having local issues decided locally can not be easily dismissed. See Armco Steel Co. v. CSX Corp., 790 F.Supp. 311, 324 (D.D.C. 1991). This public consideration counsels strongly in favor of transfer, especially when coupled with plaintiffs' lack of ties to their forum of choice. Another public consideration, that plaintiff

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                    7

may be forum shopping, also counsels for transfer. Although the undersigned makes no finding

as to the issue of forum shopping, the court finds unpersuasive plaintiff's argument that this

district has developed a particular expertise in this area of the law, or necessarily would be any

more or less likely to find a federal statute unconstitutional.

In sum, the undersigned finds the private and public considerations and interests of justice

best served by transferring this case to the Western District of Wisconsin. Its local nature, and

the parties' ties to that community, dictate such a conclusion. Plaintiffs are unable to establish

any real ties to their forum of choice, other than their assumption that the chances of success are

greater here. Consequently, in this Court's discretion, the case should be transferred.


**CONCLUSION**

It is, therefore, this 16th day of August, 2002,

**ORDERED** that Federal Defendants' Motion to Transfer (Docket No. 8), and the State

of Wisconsin and Governor Scott McCallum Motion to Transfer (Docket No. 9), are

**GRANTED**, and that this action is hereby transferred to the United States District Court for the

Western District of Wisconsin.


DEBORAH A. ROBINSON
United States Magistrate Judge

1  STEPHEN V. QUESENBERRY
   LESTER J. MARSTON
2  MICHAEL S. PFEFFER
   CALIFORNIA INDIAN LEGAL SERVICES
3  510 - 16th Street, Suite 301
   Oakland, CA 94612
4  (415) 835-0284
   Attorneys for Plaintiffs

5
   WILLIAM T. MCGIVERN, JR.
6  United States Attorney
   FRANCIS B. BOONE
7  Assistant United States Attorney
   450 Golden Gate Avenue
8  San Francisco, California  94102
   Telephone: (415) 556-3215

9
   GLEN R. GOODSELL
10 Trial Attorney
   United States Department of Justice
11 Environment and Natural Resources Division
   Benjamin Franklin Station, Room 857
12 P.O. Box 663
   Washington, D.C. 20044-0663
13 Telephone: (202) 272-8144
   Attorneys for Federal Defendants

14
   ROBERT G. BOEHM
15 City Attorney
   City of Chico
16 P.O. Box 3420
   Chico, CA  95927-3420
17 Telephone: (916) 895-4826
   Attorney for City of Chico

18

19              IN THE UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
20
   Scotts Valley Band of Pomo Indians of     )
21 the Sugar Bowl Rancheria, et al.,          )
                                              )   No. C-86-3660-VRW
22      Plaintiffs,                           )
        v.                                    )   STIPULATION FOR
23                                            )   ENTRY OF JUDGMENT
   United States of America, et al.           )
24                                            )   (CHICO RANCHERIA)
        Defendants.                           )
25 _____)
                                              )
26 Gerald R. Stewart, et al.; County of       )
   Sonoma; and City of Chico,                 )
27                                            )
        Defendants-Intervenors.               )
28 _____)

   STIPULATION FOR ENTRY OF JUDGMENT
   (CHICO RANCHERIA)

1    The Mechoopda Indian plaintiffs,[1] the Federal defendants
2 and the City of Chico (hereinafter "the parties"), enter into
3 the following stipulation for the purpose of reaching a
4 compromise and final settlement of the claims alleged by said
5 plaintiffs against the Federal defendants in the Third Amended
6 Class Action Complaint For Declaratory And Injunctive Relief And
7 Damages, filed herein on April 29, 1991.  The settling parties
8 understand that this stipulation shall provide the basis for
9 entry of a judgment by the Court which will serve to implement,
10 in an orderly and timely fashion, the substantive and procedural
11 matters agreed to herein.  Accordingly, the parties stipulate
12 and agree as follows:

13    1.  Federal defendants agree that the Chico Rancheria was
14 not terminated, and the Rancheria assets were not distributed,
15 in accordance with the provisions of the Act of August 18, 1958,
16 P.L. 85-671, 72 Stat. 619, as amended by the Act of August 11,
17 1964, P.L. 88-419, 78 Stat. 390 ("the Rancheria Act").  Federal
18 defendants further agree that the Indian status of the persons
19 named as distributees in the distribution plan of the Chico
20 Rancheria was not terminated in accordance with the Rancheria
21 Act.

22    2.  Federal defendants agree that the distributees and the
23 dependent members of the Chico Rancheria, and their lineal
24 descendants, will have the individual and collective status and

25

26    ―――――――――――
    [1]  The named plaintiffs, representing the interests of the
27 Mechoopda Indians, are Robyn D. McHenry, Loretta Lynn, Roberta J.
 Clements, Dennis E. Ramirez, Clara Wilson and Eileen Gladys
28 Wilson.

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)                                          1

1  rights, including the rights to organize for their common

2  welfare and to govern their affairs, which they had prior to

3  termination.  Federal defendants further agree to deal with

4  these Indians on the same basis on which they deal with other

5  Indians of a similar status.

6      3.  Federal defendants agree that, within 30 days of the

7  Court's approval of the entry of judgment pursuant to this

8  stipulation, the Assistant Secretary will transmit to the

9  Federal Register for publication a proclamation stating:

10         a.  that the Chico Rancheria was not lawfully

11             terminated and its assets were not distributed in

12             accordance with the provisions of the Rancheria

13             Act, Act of August 18, 1958, P.L. 85-671, 72 Stat.

14             619, as amended by the Act of August 11, 1964, P.L.

15             88-419, 78 Stat. 390;

16         b.  that the distributees of the Chico Rancheria are

17             eligible for all rights and benefits extended to

18             Indians under the Constitution and laws of the

19             United States; and

20         c.  that the Mechoopda Indian Tribe of the Chico

21             Rancheria and its members shall be eligible for all

22             rights and benefits extended to other federally

23             recognized Indian tribes and their members,

24             including Indian tribes defined and organized under

25             the provisions of the Indian Reorganization Act

26             (IRA), 25 U.S.C. § 461 et seq.

27     4.  Effective as of the date of entry of this stipulation

28  by the Court, the Mechoopda Tribe shall, consistent with Federal

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)

2

1 law, have the right to determine its own membership and
2 otherwise to govern its internal and external affairs as a
3 tribal entity consistent with its status prior to termination.
4 When and if the members of the Mechoopda Tribe reorganize
5 pursuant to federal statute, the federal defendants agree to add
6 them to the list of federally recognized tribal entities then
7 being used and will include them on any list of tribal entities
8 published in the Federal Register.  The name of the tribal
9 entity entered on the list(s) shall be the name chosen by the
10 Mechoopda Tribe in its governing document.  The Federal
11 defendants further agree to advise the Commissioner of the
12 Internal Revenue Service promptly that the Mechoopda Tribe has
13 organized to exercise governmental functions and has been added
14 to the list of tribal entities.

15      5.   <u>Lands Within the Former Boundaries of the Chico</u>
          <u>Rancheria and Currently in Indian Ownership</u>
16

17     Federal defendants agree to accept in trust status that
18 particular parcel of land within the boundaries of the former
19 Chico Rancheria which is identified as Butte County Assessor's
20 Parcel No. 43-18-0-036-0-0, and which is currently used as a
21 cemetery for the Mechoopda Tribe.  This parcel is currently in
22 Indian ownership and was deeded or passed as tribal community
23 property as a direct consequence of termination.  Title is
24 currently held in the name of Henry Azbill, et al., Trustees c/o
25 Mechoopda Indian Tribe.  The Mechoopda Indian plaintiffs agree
26 that the use of this parcel shall be restricted solely to its
27 current use as a cemetery.

28     The only other parcel of land within the boundaries of the

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)                         3

1    former Chico Rancheria remaining in Indian ownership is that

2    particular parcel of land identified as Butte County Assessor's

3    Parcel No. 43-18-0-039-0-0. Title to this parcel is currently

4    held in joint tenancy by Donna Mae Rickard, and her daughter, E.

5    Jean Berney, who desire that the parcel remain in fee status.

6    (See Affidavits of Donna Mae Rickard, and E. Jean Berney,

7    attached hereto as Exhibits A and B.) The Mechoopda Indian

8    plaintiffs, Ms. Rickard and Ms. Berney agree that this parcel

9    shall remain in fee status.

10        6.    Interests in Allotted Lands Outside the Boundaries of
                the Former Chico Rancheria.

11

12       Since persons listed in the plan for distribution of assets

13   of the Chico Rancheria may have acquired interests in trust

14   lands outside the Rancheria, which interests may no longer be

15   held in trust because of the purported termination of the Indian

16   status of the listed persons, Federal defendants agree to accept

17   in trust any fee interests in trust or former trust allotments

18   issued to such persons, if such interests are currently held in

19   the name of the Mechoopda Indian distributee, or of his/her

20   dependent or Indian heir, or successor in interest, provided the

21   successor is an Indian of the rancheria or reservation where the

22   allotment is located. The parties acknowledge that there is

23   only one public domain allotment in Butte County and that it

24   would not be affected by this provision or paragraph 9 because

25   the interests therein are not held by any Mechoopda Indian

26   distributee of the Chico Rancheria, or by his/her dependent or

27   Indian heir, or Indian successor in interest.

28

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)                                                4

1       7.   Improvements to the Indian Cemetery Within the Former
           Boundaries of the Chico Rancheria

2

3      Federal defendants agree to contribute up to $5,000.00

4 toward the cost of constructing a fence around the cemetery

5 parcel identified in Paragraph 5.

6      Plaintiffs agree to construct a fence around the cemetery

7 within one year of the date this stipulation, fully executed by

8 the parties' counsel, is filed with court. At least those

9 portions of the fence that face West Sacramento Avenue and

10 Rancheria Road will be constructed of wrought iron, unless the

11 funds available prove to be inadequate for this purpose. In that

12 event, plaintiffs and the City of Chico will either secure the

13 necessary additional funds, or will consider a less expensive

14 form of fencing that is agreeable to the plaintiffs and the

15 City, and which can be constructed within the funds available.

16      8.   Future Land Acquisitions Within the Boundaries of the
           Former Chico Rancheria

17

18      With respect to any future acquisition of land within the

19 exterior boundaries of the former Chico Rancheria by the

20 Mechoopda Tribe, the Mechoopda Indian plaintiffs agree that

21 acceptance of any such land in trust status shall be subject to

22 the condition that its use be and remain consistent with the

23 land use element of the General Plan of the City of Chico or the

24 County of Butte, whichever may apply.

25      9.   Process for Restoring Trust Status -- Mechoopda Indian
           Cemetery and Interests in Allotments

26

27      Federal defendants agree that restoration of lands to trust

28 status under the provisions of Paragraphs 5 and 6 above shall be

1 | accomplished as follows:

2 |       a.    Notice - Publication:  Federal defendants shall

3 |             publish a copy of the judgment entered herein in

4 |             a newspaper of general circulation within the

5 |             county in which the trust lands are located.

6 |             Additionally, a copy of the judgment shall be

7 |             mailed to:

8 |             (1)   each individual Indian person listed in the

9 |                   Termination Proclamation for the Chico

10|                   Rancheria, and

11|             (2)   such other persons, based on all available

12|                   information in the possession of the Federal

13|                   defendants and any other information

14|                   supplied by the Mechoopda Indian plaintiffs,

15|                   who may be related to or descended from any

16|                   such individual, for whom the Bureau of

17|                   Indian Affairs has a current or last known

18|                   address.

19|       b.    Election to Convey:  Each Indian of the Mechoopda

20|             Tribe who has retained any interest in or to

21|             allotted lands, fee patent to which was issued

22|             upon or, in the judgment of the Secretary, as a

23|             direct result of the purported termination of the

24|             Chico Rancheria, may elect to convey his or her

25|             interest to the United States, to be held in

26|             trust for the benefit of a person who is related

27|             by blood or, at the time of this decree, is the

28|             individual's spouse and is otherwise eligible to

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)                                                    6

1   have land held in trust as an Indian by the

2   United states for his or her benefit.  With

3   respect to the Mechoopda cemetery parcel, the

4   trustees for the Mechoopda Tribe listed on the

5   fee patent shall be entitled to convey the

6   interests therein to be held in trust by the

7   United States for the benefit of the Indians of

8   the Mechoopda Tribe, or such other recognized

9   Mechoopda tribal entity as specified in the

10  instrument of conveyance.

11      c.  Form of Conveyance Instrument; Conditions and

12          Restrictions:  Conveyance of title to the United

13          States made pursuant to paragraphs 5 or 6 may, at

14          the election of the grantor, provide that the

15          United States will hold title in trust for an

16          Indian or Indians, as provided above, or a tribal

17          entity of the Mechoopda Tribe, and be subject to

18          such conditions or restrictions as set forth in

19          the instrument of conveyance; provided such

20          conditions and restrictions are acceptable to the

21          United States; and, provided further, that the

22          United States shall not unreasonably withhold its

23          acceptance.

24      d.  Recording Conveyance:  Upon acceptance of any

25          instrument or instruments conveying to the United

26          States title to the Mechoopda cemetery on the

27          former Chico Rancheria, or to interests in

28          allotted lands pursuant to this stipulation and

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)                                                7

1    the judgment entered thereon, the Secretary of

2    the Interior or his designee shall promptly

3    record said instruments with the County Recorder

4    of the county in which said lands are located.

5    10.  Nothing in this stipulation shall be construed to

6 require the Secretary to accept in trust any land which has on

7 it hazardous substances or contaminants.  Before the Secretary

8 accepts any land in trust pursuant to this stipulation, a

9 hazardous substance determination shall be made in accordance

10 with 602 DM 2 and the instructions for implementing that chapter

11 of the Department Manual described in 54 BIAM Bulletin 1, dated

12 March 9, 1990, and any duly adopted revisions of the manual or

13 instructions.  (Copies of 602 DM 2 and 54 BIAM Bulletin 1 are

14 attached hereto as Exhibits C and D, respectively.)

15    11.  Should lands be acquired in the future on behalf of

16 the Mechoopda Tribe, if organized under the IRA, the Secretary

17 shall, within 180 days of acquisition, consider and respond to a

18 request to issue a proclamation in accordance with 25 U.S.C. §

19 467 that such newly acquired lands constitute an Indian

20 reservation.

21    12.  The Federal defendants will, following the execution

22 of this stipulation by their counsel, prepare a comprehensive

23 needs assessment for the Mechoopda Tribe, including the

24 projected needs of the Tribe for Federal programs and services

25 through Fiscal Year 1994.

26    The Federal defendants will provide workshops prior to

27 March 1992 to be conducted by a technical team comprised of

28 representatives from the Bureau of Indian Affairs, the Indian

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)

8

1  Health Service, the Department of Housing and Urban Development,
2  and such other consultants as may be necessary, for the purpose
3  of providing needed technical assistance to the Mechoopda Tribe.
4  The scheduling and content of the workshops will be developed by
5  the Federal defendants in consultation with representatives from
6  the Mechoopda Tribe and will be designed to provide, at a
7  minimum, specific information regarding Federal programs
8  available to Indian tribes, including the tribal contracting
9  requirements of Public Law 93-638, and an overview of those
10 Indian programs available to meet the developmental needs of
11 individual Indians, such as health care, education and
12 vocational training.  The Federal defendants shall cover the
13 costs of attendance at the workshops of at least one
14 representative from the Mechoopda Tribe.

15      13.  The Mechoopda Indian plaintiffs will provide the
16 federal defendants with the names, current or last known
17 residential address of each potential class member to whom it
18 has given notice of this proposed settlement and the names and
19 ages of all minors who are dependents of potential class
20 members.  The Mechoopda Indian plaintiffs will give written
21 notice of the terms of the settlement to all members of the
22 plaintiff class, as such class is defined in Paragraph 10 of the
23 Third Amended Class Action Complaint, filed herein on April 29,
24 1991.  The costs of giving such notice shall be borne solely by
25 the Federal defendants.  The form of notice, the deadline for
26 responding to the notice, and other procedures for class members
27 to opt in or out of the settlement, shall be set forth in a
28 separate stipulation to be filed with the Court.

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)

9

1    14.  The Mechoopda Indian plaintiffs, in consideration of

2  the above agreements by the Federal defendants, will (a) release

3  and forever discharge Federal defendants from and against any

4  and all liability, including attorneys' fees and costs, arising

5  out of this litigation and settlement, provided, this release

6  and discharge shall not apply to claims relating to hazardous

7  substances or contaminants which may be identified in any survey

8  conducted in order to make the determination required by

9  paragraph 9 of this agreement; and (b) will dismiss with

10  prejudice all money damages claims alleged herein against the

11  Federal defendants, including any individual and tribal claims.

12    15.  It is agreed that the Mechoopda Indian plaintiffs will

13  not seek, and Federal defendants will not agree, to reestablish

14  the former boundaries of the Chico Rancheria, and that no action

15  taken in connection with this settlement shall be construed as

16  reestablishing the former Rancheria boundaries.

17    16.  It is understood that none of the terms of this

18  agreement shall deprive a Federal official of his authority to

19  revise, amend or promulgate regulations, nor shall this

20  agreement be construed to commit a Federal official to expend

21  funds not appropriated by Congress.  Furthermore, the sole

22  remedy of the Mechoopda Indian plaintiffs for the  failure of

23  the Federal defendants to comply with its terms shall be to

24  initiate such proceedings in this action as may be available, or

25  file a new action in the United States district court, to

26  enforce the provisions of this stipulation and the judgment

27  entered thereon.

28

STIPULATION FOR ENTRY OF JUDGMENT
(CHICO RANCHERIA)

Dated: ~~December~~ January 3, ~~1991~~ 1992.

STEPHEN V. QUESENBERRY
CALIFORNIA INDIAN LEGAL SERVICES
510 - 16th Street, Suite 301
Oakland, CA 94612
Telephone: (415) 835-0284

Attorney for Plaintiffs


Dated: December 19, 1991.

ROBERT G. BOEHM
City Attorney
City of Chico
P.O. Box 95927-3420
Telephone: (916) 895-4826

Attorney for City of Chico


Dated: December 31, 1991.

GLEN R. GOODSELL
Trial Attorney
United States Department of Justice
Environment and Natural
Resources Division
Benjamin Franklin Station, Room 857
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 272-8144

Attorney for Federal Defendants

c:\wp51\jeb\121191.STI

STIPULATION FOR ENTRY OF JUDGMENT

ORIGINAL
FILED

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEP  6 1991

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Scotts Valley Band of Pomo Indians of
the Sugar Bowl Rancheria; Lytton Indian
Community of the Lytton Rancheria;
Guidiville Band of Pomo Indians of the
Guidiville Rancheria; Me-Choop-Da
Indians of the Chico Rancheria; Douglas
Ray, Ignatius (Steven) Elliot, Keith Pike,
Carol J. Steele, Eleanor Lopez, Robyn D.
McHenry, Loretta Lynn, Roberta J. Clements,
Dennis E. Ramirez, Clara Wilson, Eileen
Gladys Wilson, individually and on behalf
of all others similarly situated,

      Plaintiffs,

    v.

United States of America; Manuel Lujan,
Jr., Secretary of the Interior, Eddie
Brown, Assistant Secretary of the Interior
for Indian Affairs; Ronald Jaeger, Area
Director, Sacramento Area Office, Bureau
of Indian Affairs; Lewis Sullivan,
Secretary of Health and Human Services,

      Defendants.

Gerald R. Stewart, et al.; County of
Sonoma; City of Chico,

      Defendants-Intervenors.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. C-86-3660-VRW

CORRECTED
ORDER FOR ENTRY
OF JUDGMENT AND
JUDGMENT

ORDER FOR ENTRY OF JUDGMENT AND JUDGMENT

1    Pursuant to Fed.R.Civ.P. 60(a), this Order corrects the

2    earlier Order For Entry Of Judgment And Judgment entered by the

3    Court in this matter on August 30, 1991.

4    On August 30, 1991, this matter came on for hearing on

5    approval of proposed settlements[1] pursuant to the order

6    prescribing notice of settlement and hearing on approval of

7    settlements issued by the Court on May 23, 1991.  This action

8    has not been certified as a class action; however, the Court

9    previously determined that it was proper to proceed under the

10   procedures of Fed.R.Civ.P. 23(e) to ensure that the settlement

11   and dismissal of plaintiffs claims would not prejudice the

12   interests of the putative class.  See Diaz v. Trust Territory of

13   the Pacific Islands, 876 F.2d 1401, 1408 (9th Cir. 1989).

14   Having reviewed the Stipulation For Entry Of Judgment

15   (Scotts Valley and Guidiville), filed March 15, 1991, the

16   Stipulation For Entry Of Judgment (Lytton), filed March 22,

17   1991, the Certificate Of Counsel, filed August 23, 1991, setting

18   forth the plaintiffs' and Federal defendants' reasons for

19   supporting the settlements, the Report Of Counsel Re:

20   Objections To Proposed Settlement, filed August 23, 1991, and

21   the other pleadings and papers on file, including the briefs and

22   declarations of counsel and others; and having fully considered

23   the arguments of counsel and any objections to the proposed

24   settlements, the Court finds that:

25   1.   Notice was duly given to putative class members as

26

----------------------

27   1.   Two settlements are involved.  One disposes of the claims
     of the Scotts Valley and the Guidiville Indian plaintiffs.  The
28   other disposes of the claims of the Lytton Indian plaintiffs.

ORDER FOR ENTRY OF JUDGMENT AND JUDGMENT

1    ordered by the Court.

2    2.   The Stipulations For Entry of Judgment compromising

3         and settling the claims of the Scotts Valley,

4         Guidiville and Lytton Indian plaintiffs will result

5         in a judgment that is fair, just and reasonable, is

6         not collusive, and will not prejudice the interests

7         of the putative class.

8    3.   There is no just reason to delay entry of a final

9         judgment in accordance with Fed.R.Civ.P. 58

10        disposing of the claims of the Scotts Valley,

11        Guidiville and Lytton Indian plaintiffs[2] in

12        accordance with the terms of the respective

13        stipulations for entry of judgment.

14   Accordingly, IT IS ORDERED THAT final judgment be, and

15   hereby is, entered according to the terms of the Stipulation For

16   Entry Of Judgment (Scotts Valley and Guidiville), filed March

17   15, 1991, and the Stipulation For Entry Of Judgment (Lytton),

18   filed March 22, 1991.

19   Dated:   September __6__, 1991

20

21                              VAUGHN R. WALKER
                                United States District Judge
22

23

24

25

26

27   ----------------------

28   2.   The claims of the Mechoopda Indian plaintiffs (Chico
          Rancheria) remain before the Court for further disposition.

ORDER FOR ENTRY OF JUDGMENT AND JUDGMENT

1 | STEPHEN V. QUESENBERRY
LESTER J. MARSTON
2 | MICHAEL S. PFEFFER
CALIFORNIA INDIAN LEGAL SERVICES
3 | 510 - 16th Street, Suite 301
Oakland, CA 94612
4 | (415) 835-0284
Attorneys for Plaintiffs

5

WILLIAM T. MCGIVERN, JR.
6 | United States Attorney
FRANCIS B. BOONE
7 | Assistant United States Attorney
450 Golden Gate Avenue
8 | San Francisco, California  94102
Telephone: (415) 556-3215

9

GLEN R. GOODSELL
10 | Trial Attorney
United States Department of Justice
11 | Environment and Natural Resources Division
Benjamin Franklin Station, Room 857
12 | P.O. Box 663
Washington, D.C. 20044-0663
13 | Telephone: (202) 272-8144
Attorneys for Federal Defendants

14

JAMES P. BOTZ
15 | County Counsel
KATHLEEN A. LAROCQUE
16 | Deputy County Counsel
TARA HARVEY
17 | Deputy County Counsel
County of Sonoma
18 | 575 Administration Dr., Rm. 116A
Santa Rosa, CA  95403-2881
19 | Telephone:  (707) 527-2421
Attorneys for Intervenor-Defendant, County of Sonoma

20

IN THE UNITED STATES DISTRICT COURT
21 | NORTHERN DISTRICT OF CALIFORNIA

22

SCOTTS VALLEY BAND OF POMO INDIANS
23 | OF THE SUGAR BOWL RANCHERIA, et al.          )
                                             )  NO. C-86-3660 WWS
24 |         Plaintiffs,                         )
                                             )  STIPULATION FOR
25 |     v.                                      )  ENTRY OF JUDGMENT
                                             )
26 | UNITED STATES OF AMERICA, et al.,           )
                                             )
27 |         Defendants.                         )
    _____)

28

STIPULATION FOR ENTRY OF JUDGMENT                                    -1-

1    The Lytton Indian plaintiffs[1], the Federal defendants and
2 the County of Sonoma (hereinafter "the parties") enter into the
3 following stipulation for the purpose of reaching a compromise
4 and final settlement of the claims relating to the Lytton
5 Rancheria alleged by said plaintiffs against the federal
6 defendants in the Second Amended Class Action Complaint for
7 Declaratory and Injunctive Relief and Damages, filed herein on
8 August 25, 1987.  The settling parties understand that this
9 stipulation shall provide the basis for entry of a judgment by
10 the court which will serve to implement, in an orderly and timely
11 fashion, the substantive and procedural matters agreed to herein.
12 Accordingly, the parties stipulate and agree as follows:

13    1.    Federal defendants agree that the Lytton Rancheria
14 was not terminated, and the rancheria assets were not
15 distributed, in accordance with the provisions of the Act of
16 August 18, 1958, P.L. 85-671, 72 Stat. 619 ("the Rancheria Act").
17 Federal defendants further agree that the Indian status of the
18 persons named as distributees in the distribution plans for the
19 Lytton Rancheria was not terminated in accordance with the
20 Rancheria Act.

21    2.    Federal defendants agree that the distributees and
22 dependent members of the Lytton Rancheria, and their lineal
23 descendants, will have the individual and collective status and
24 rights, including the rights to organize for their common welfare
25 and to govern their affairs, which they had prior to termination.

26 

27    [1]  The named plaintiffs, representing the interests of the
Lytton Indians, are the Lytton Indian Community and Carol J.
28 Steele.

STIPULATION FOR ENTRY OF JUDGMENT                              -2-

1  Federal defendants further agree to deal with these Indians on
2  the same basis on which they deal with other Indians of a similar
3  status.

4      3.      Federal defendants agree that within 30 days of the
5  Court's approval of the entry of judgment pursuant to this
6  stipulation the Assistant Secretary will transmit to the Federal
7  Register for publication a proclamation stating:

8      (a)    that the Lytton Rancheria was not lawfully
9             terminated and its assets were not distributed in
10            accordance with the provisions of the Rancheria Act,
11            Act of August 18, 1958, P.L. 85-671, 72 Stat. 619.

12     (b)    that the distributees of the Lytton Rancheria are
13            eligible for all rights and benefits extended to
14            Indians under the Constitution and laws of the
15            United States; and

16     (c)    that the Lytton Indian Community and its members
17            shall be eligible for all rights and benefits
18            extended to other federally recognized Indian tribes
19            and their members, including Indian tribes defined
20            and organized under the provisions of the Indian
21            Reorganization Act (IRA), 25 U.S.C. § 461 et seq.

22     4.      Effective as of the date of entry of this
23  stipulation by the Court, the Lytton Indian Community shall,
24  consistent with Federal law, have the right to determine its own
25  membership and otherwise to govern its internal and external
26  affairs as a tribal entity consistent with its status prior to
27  termination.  When and if the members of the Lytton Indian
28  Community organize pursuant to federal statute, the federal

STIPULATION FOR ENTRY OF JUDGMENT                                    -3-

1  defendants agree to add them to the list of federally recognized
2  tribal entities then being used and will include them on any list
3  of tribal entities published in the Federal Register.  The name
4  of the tribal entity entered on the list(s) shall be the name
5  chosen by the Lytton Indian Community in its governing document.
6  The Federal defendants further agree to advise the Commissioner
7  of the Internal Revenue Service promptly that the Lytton Indian
8  Community has organized to exercise governmental functions and
9  has been added to the list of tribal entities.

10      5.      Future Land Acquisitions.

11      It is the intent of the parties to create a procedure in
12 this agreement for resolution of certain disputes that may arise
13 regarding land use on any future-acquired lands of the Lytton
14 Indian Community in Sonoma County, the acceptance in trust of
15 which is contemplated.  It is the further intent of the parties
16 to provide specific criteria that will govern both the acceptance
17 in trust and any future modification in use of any lands that may
18 be acquired in the future by the Lytton Indian Community in the
19 area known as the Alexander Valley, Sonoma County.  In
20 furtherance of this express intent, the parties agree that:

21      (a)   General Rule:  The policy of the Secretary of the
22            Interior dated July 19, 1990, and the guidelines set
23            forth therein, for placing lands in trust status for
24            American Indians, a copy of which is attached hereto
25            as Exhibit A, shall apply to the acceptance of land
26            in Sonoma County to be placed in trust for the
27            benefit of the Lytton Indian Community.

28      (b)   Lytton Rancheria:  With respect to land within the

STIPULATION FOR ENTRY OF JUDGMENT                        -4-

1    exterior boundaries of the former Lytton Rancheria,

2    a description and map of which is attached hereto as

3    Exhibit B, the above-referenced policy and

4    guidelines would preclude the Secretary from

5    accepting such land in trust for any use that is

6    inconsistent with the Sonoma County General Plan.

7    (c)    Alexander Valley: With respect to land within the

8    Alexander Valley, as described by the map attached

9    hereto as Exhibit C, the above-referenced guidelines

10    would preclude the Secretary from accepting such

11    land in trust to be used for gambling purposes,

12    including but not limited to high stakes bingo,

13    unless such use is authorized under the County's

14    General Plan.

15    (d)    Dispute Resolution: Any dispute whether a proposed

16    acceptance of land in trust within the Alexander

17    Valley complies with the Secretary's policy and

18    guidelines, and the specific interpretations thereof

19    that have been agreed to by the parties, shall be

20    resolved in the following manner:

21    (1)    The County of Sonoma will make an initial

22    determination whether the proposed use of any

23    land sought to be placed in trust within the

24    Alexander Valley is consistent with the

25    Secretary's policy and guidelines and will

26    communicate its views in writing to the

27    Secretary and to the Lytton Indian Community.

28    (2)    If the County determines that the proposed use

STIPULATION FOR ENTRY OF JUDGMENT                                    -5-

is inconsistent with the Secretary's policy and guidelines, and the Lytton Indian Community disputes that finding and requests the hearing provided for herein, the Secretary will refer the matter to an administrative law judge (ALJ) within the Office of Hearings and Appeals (OHA) of the Department of the Interior for hearing and final decision.  The decision of the ALJ shall be final, and the parties specifically agree that there shall be no further right of review, administrative or judicial.

6.    Modification of Land Use -- Alexander Valley

The parties agree that any change in the use of land located in the Alexander Valley and held in trust for the Lytton Indian Community shall comply with the following standards and procedures:

(a)    the proposed change in use shall be subject to criteria 4, 5 and 7 of the Secretary's policy and guidelines and the specific construction thereof agreed to by the parties in paragraphs 5(b) and 5(c).

(b)    any dispute between the County and the Lytton Indian Community regarding such a change in use shall be referred to and decided by the OHA in accordance with the procedures set forth in paragraph 5(d).

7.    Interests in Allotted Indian Lands Outside the Boundaries of the Former Lytton Rancheria

Since persons listed in the plan for distribution of assets

1  of the Lytton Rancheria may have acquired interests in trust
2  lands outside the Rancheria, which interests may no longer be
3  held in trust because of the purported termination of the Indian
4  status of the listed persons, Federal defendants agree to accept
5  in trust any fee interests in trust or former trust allotments
6  issued to such persons, if such interests are currently held in
7  the name of the distributee, or of his/her dependent or Indian
8  heir, or successor in interest, provided the successor is an
9  Indian of the rancheria or reservation where the allotment is
10 located.  The parties acknowledge that there are no public domain
11 allotments located in Sonoma County and that the provisions
12 contained in this paragraph and paragraph 8 do not affect any
13 land located in Sonoma County.

14      8.      Process for Restoring Trust Status -- Interests in
15              Allotments

16 Federal defendants agree that restoration of lands to trust
17 status under the provisions of Paragraph 7 above shall be
18 accomplished as follows:

19      (a)     Notice - Publication:  Federal defendants shall
20              publish a copy of the judgment in a newspaper of
21              general circulation within the county in which the
22              trust lands are located.  Additionally, a copy of
23              this judgment shall be mailed to:
24              (1)  each individual Indian person listed in the
25                   Termination Proclamation for the Lytton
26                   Rancheria, and
27              (2)  such other persons, based on all available
28                   information in the possession of the Federal

1       defendants and any other information supplied

2       by the plaintiffs, who may be related to or

3       descended from any such individual, for whom

4       the Bureau of Indian Affairs has a current or

5       last known address;

6   (b)   Election to Convey:  Each Indian of the Lytton

7       Indian Community who has retained any interest in or

8       to allotted lands, fee patent to which was issued

9       upon or, in the judgment of the Secretary, as a

10      direct result of the purported termination of the

11      Lytton Rancheria, may elect to convey his or her

12      interest to the United States, to be held in trust

13      for the benefit of a person who is related by blood

14      or, at the time of this decree, is the individual's

15      spouse and is otherwise eligible to have land held

16      in trust as an Indian by the United States for his

17      or her benefit;

18  (c)   Form of Conveyance Instrument; Conditions and

19      Restrictions:  Conveyance of title to the United

20      States made pursuant to paragraph 8(b) may, at the

21      election of the grantor, provide that the United

22      States will hold title in trust for an Indian or

23      Indians, as provided above, and be subject to such

24      conditions or restrictions as set forth in the

25      instrument of conveyance; provided such conditions

26      and restrictions are acceptable to the United

27      States; and, provided further, that the United

28      States shall not unreasonably withhold its

STIPULATION FOR ENTRY OF JUDGMENT                                    -8-

1    acceptance;

2    (d)    Recording Conveyance:  Upon acceptance of any

3    instrument or instruments conveying to the United

4    States title to interests in allotted lands pursuant

5    to this stipulation and the judgment entered

6    thereon, the Secretary of the Interior or his

7    designee shall promptly record said instruments with

8    the County Recorder of the County in which said

9    lands are located.

10    9.    Nothing in this stipulation shall be construed to

11    require the Secretary to accept in trust any land which has on it

12    hazardous substances or contaminants.  Before the Secretary

13    accepts any land in trust pursuant to this stipulation, a

14    hazardous substance determination shall be made in accordance

15    with 602 DM 2 and the instructions for implementing that chapter

16    of the Department Manual described in 54 BIAM Bulletin 1, dated

17    March 9, 1990, and any duly adopted revisions of the manual or

18    instructions.  Copies of 602 DM 2 and 54 BIAM Bulletin 1 are

19    attached hereto as Exhibits D and E, respectively.

20    10.    Should lands be acquired in the future on behalf of

21    the Lytton Indian Community, if organized under the IRA, the

22    Secretary shall within 180 days of acquisition consider and

23    respond to a request to issue a proclamation in accordance with

24    25 U.S.C. § 467 that such newly acquired lands constitute an

25    Indian reservation.

26    11.    The Federal defendants will, following the execution

27    of this stipulation by their counsel, prepare a comprehensive

28    needs assessment for the Lytton Indian Community, including the

STIPULATION FOR ENTRY OF JUDGMENT                                    -9-

1 projected needs of the Community for Federal programs and
2 services through Fiscal Year 1994.

3     The Federal defendants will provide workshops prior to March
4 1992 to be conducted by a technical team comprised of
5 representatives from the Bureau of Indian Affairs, the Indian
6 Health Service, the Department of Housing and Urban Development,
7 and such other consultants as may be necessary, for the purpose
8 of providing needed technical assistance to the Lytton Indian
9 Community and other participating Indian groups. The scheduling
10 and content of the workshops will be developed by the Federal
11 defendants in consultation with representatives from the Lytton
12 Indian Community and other participating Indian groups and will
13 be designed to provide, at a minimum, specific information
14 regarding Federal programs available to Indian tribes, including
15 the tribal contracting requirements of Public Law 93-638, and an
16 overview of those Indian programs available to meet the
17 developmental needs of individual Indians, such as health care,
18 education and vocational training. The Federal defendants shall
19 cover the costs of attendance at the workshops of at least one
20 representative from the Lytton Indian Community.

21     12.     The Lytton Indian plaintiffs will provide the
22 federal defendants with the names, current or last known
23 residential address of each potential class member to whom it has
24 given notice of this proposed settlement and the names and ages
25 of all minors who are dependents of potential class members. The
26 Lytton Indian plaintiffs will give written notice of the terms of
27 the settlement to all members of the plaintiff class, as such
28 class is defined in Paragraph 10 of the Second Amended Class

STIPULATION FOR ENTRY OF JUDGMENT         -10-

1  Action Complaint, filed herein on August 25, 1987.  The costs of

2  giving such notice shall be borne solely by the Federal

3  defendants.  The form of notice, the deadline for responding to

4  the notice, and other procedures for class members to opt in or

5  out of the settlement, shall be set forth in a separate

6  stipulation to be filed with the Court.

7      13.      The Lytton Indian plaintiffs, in consideration of

8  the above agreements, will (a) release and forever discharge

9  federal defendants from and against any and all liability,

10  including attorneys' fees and costs, arising out of this

11  litigation and settlement, provided, this release and discharge

12  shall not apply to claims relating to hazardous substances or

13  contaminants which may be identified in any survey conducted in

14  order to make the determination required by paragraph 9 of this

15  agreement; and (b) will dismiss with prejudice all money damages

16  claims alleged herein against the federal defendants, including

17  any individual and tribal claims.

18      14.      In consideration of the agreements reached herein,

19  the County of Sonoma (a) will dismiss with prejudice its cross-

20  claim for declaratory and injunctive relief filed herein on

21  December 14, 1990, and (b) agrees to assist the Lytton Indian

22  Community in identifying lands within Sonoma County suitable for

23  housing and economic development.  Such assistance shall include:

24      (1)      Providing information on specific areas of Sonoma

25              County that would be suitable for housing or

26              economic development, or both, including

27              identification of specific parcels where basic

28              services, such as water and sanitation, are either

STIPULATION FOR ENTRY OF JUDGMENT                        -11-

1    available or could be developed without excessive
2    cost.
3    (2)    Identifying and providing information on specific
4    land parcels, if known, that might be available for
5    acquisition in the geographic areas identified under
6    subparagraph (1), and which are of sufficient size
7    to be feasible for community housing or economic
8    development, or both.  The Community will provide
9    the County with a preliminary assessment of the
10    needs and priorities of its members.
11    (3)    Conducting an informational workshop for
12    representatives of the Lytton Indian Community on
13    any low and moderate-income housing programs
14    administered by the County, including ways in which
15    redevelopment funds might be used to assist the
16    Lytton Indian Community in land acquisition for
17    housing.
18    15.    The parties recognize that this agreement
19 contemplates the future reorganization and federal recognition of
20 the Lytton Indian Community as a tribal entity exercising self-
21 governing powers under the Indian Reorganization Act.  The
22 members of the Lytton Indian Community agree that when such
23 reorganization is complete, the authorized governing body of the
24 Lytton Indian Community will adopt a resolution specifically
25 confirming this agreement and directing that it be signed by the
26 chief executive officer of the Community.
27    16.    It is agreed that plaintiffs will not seek, and
28 federal defendants will not agree, to reestablish the former

STIPULATION FOR ENTRY OF JUDGMENT                          -12-

1  boundaries of the Lytton Rancheria, and that no action taken in
2  connection with this settlement shall be construed as
3  reestablishing the former rancheria boundaries.

4      17.    It is understood that none of the terms of this
5  agreement shall deprive a federal official of his authority to
6  revise, amend or promulgate regulations, nor shall this agreement
7  be construed to commit a federal official to expend funds not
8  appropriated by Congress.  Furthermore, the sole remedy of a
9  party to this agreement for the failure of another party to
10  comply with its terms shall be to initiate such proceedings in
11  this action as may be available, or file a new action in the
12  United States district court, to enforce the provisions of this
13  stipulation and the judgment entered thereon.

14

15  Dated:  March 14, 1991
                                STEPHEN V. QUESENBERRY
16                              CALIFORNIA INDIAN LEGAL SERVICES
                                510 - 16th Street, Suite 301
17                              Oakland, CA  94612
                                Telephone:  (415) 835-0284
18

19                              Attorney for Plaintiffs

20

21  Dated:  March 21st, 1991
                                GLEN R. GOODSELL
22                              Trial Attorney
                                United States Department of Justice
23                              Environment and Natural
                                Resources Division
24                              Benjamin Franklin Station, Room 857
                                P.O. Box 663
25                              Washington, D.C.  20044-0663
                                Telephone:  (202) 272-8144
26
                                Attorney for Federal Defendants
27

28

STIPULATION FOR ENTRY OF JUDGMENT                              -13-

1

2  Dated:  March _14_, 1991

   TARA HARVEY,
3  Deputy County Counsel
   County of Sonoma
4  575 Administration Drive, Rm. 116A
   Santa Rosa, CA  95403-2881
5  Telephone:  (707) 527-2421

6  Attorney for Intervenor-Defendant,
   County of Sonoma

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  s:\svq\scotts\0030191.stf

28

STIPULATION FOR ENTRY OF JUDGMENT                                    -14-