IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ME-WUK INDIAN COMMUNITY OF THE WILTON RANCHERIA,<br><br>    Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE,<br>In his official capacity as Secretary of the Interior,<br><br>    Defendant. | Case No. 1:07-CV-00412 (RCL)<br><br>ORAL ARGUMENT REQUESTED |
| WILTON MIWOK RANCHERIA, a formerly federally-recognized Indian tribe, ITS MEMBERS, and DOROTHY ANDREWS<br><br>    Plaintiffs-in-Intervention | |

**PLAINTIFFS/INTERVENORS' REPLY TO PLAINTIFF ME-WUK INDIAN COMMUNITY'S OPPOSITION TO MOTION TO INTERVENE**

**I.
INTRODUCTION**

Plaintiff Me-Wuk Indian Community of the Wilton Rancheria (hereinafter referred to as "Nominal Plaintiff") filed its complaint in this action on February 28, 2007 (hereinafter referred to as the "DC Action"). Defendant moved to transfer venue to the Eastern District of California and to be relieved of its obligation to respond to the Complaint in the District of Columbia on April 23, 2007. Nominal Plaintiff's opposition to that motion was filed on May 7, 2007 and Defendant's Reply thereto was filed on May 15, 2007.

The Wilton Miwok Rancheria, a formerly federally-recognized Indian Tribe, its Members and Dorothy Andrews (hereinafter referred to as "Plaintiffs/Intervenors") learned of this lawsuit in May, 2007 and promptly filed their own action against Defendant Kempthorne and others in the Northern District of California on May 21, 2007 (hereinafter the "California

1

Action") where related proceedings concerning the unlawful termination of Plaintiffs/Intervenors and other California Indian Tribes as federally-recognized Indian Tribes pursuant to the terms of the California Rancheria Act have been pending since 1979.

Plaintiffs/Intervenors filed their motion to intervene in this action on May 29, 2007, together with supporting declarations of Mary Tarango, Anita Franklin and John Nyhan, and lodged their Motion to Transfer Venue to the Northern District of California and Opposition to Defendant's Motion to Transfer Venue to the Eastern District of California.

Counsel for Defendant Kempthorne does not oppose the Motion to Intervene and has not yet taken a position on Plaintiffs/Intervenors' Motion to Transfer this case to the Northern District of California (San Jose Division) rather than to the Eastern District of California (Sacramento Division) as initially requested by Defendant.

On May 29, 2007, the Honorable Jeremy Fogel, Judge of the United States District Court for the Northern District of California (San Jose Division) entered an order relating the California Action to another case assigned to him, *Tillie Hardwick, et al. v. United States of America, et al.* No. C-79-01710 (N.D. Cal.) (Complaint filed in 1979) (*see* the attached Second Declaration of John Nyhan in Support of Motion to Intervene, dated June 21, 2007, ¶ 3 and Exhibit M thereto). The United States did not oppose the motion to relate the California Action to the *Hardwick* litigation (Second Nyhan Dec., ¶ 2). Judge Fogel has issued a scheduling order and set a Case Management Conference in the California Action for August 31, 2007. (Second Nyhan Dec. ¶ 3 and Exhibit N thereto.)

2

## II.
## ARGUMENT

**A.  IN ITS OPPOSITION, NOMINAL PLAINTIFF FAILS TO MENTION, MUCH LESS COUNTER, THE GROUNDS ON WHICH PLAINTIFFS/INTERVENORS ARE ENTITLED TO MANDATORY INTERVENTION.**

Rule 24(a) of the Federal Rules of Civil Procedure provides that:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

Rule 24(a) confers an unconditional right to intervene. This right of intervention must be granted if four prerequisites are met: (1) timeliness, (2) cognizable interest, (3) impairment, and (4) lack of adequate representation. *Williams Limited v. W. & H. Trade Marks (Jersey) Limited*, 840 F.2d 72, 74 (D.C.Cir. 1988). As discussed below, Plaintiffs/Intervenors meet all four of the prerequisites for mandatory intervention under FRCP, Rule 24(a). Thus, the Court must allow intervention in this case.

    1.    <u>The Motion to Intervene is Timely.</u>

Rule 24(a) requires that any application for intervention should be timely. However, a court should be more reluctant to deny the motion when intervention is sought as a matter of right, as here. *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980). It is unquestioned that Plaintiffs/Intervenors have timely filed their application for intervention. The Nominal Plaintiff filed its Complaint on February 28, 2007. Upon learning of the filing of this Complaint in May, 2007, Plaintiffs/Intervenors promptly filed their Motion to Intervene on May 29, 2007. Defendant has moved to transfer venue to the Northern District of California and to be relieved of its obligation to file an answer in this court and does not oppose this Motion to Intervene and the Court has not yet issued any orders in this case.

3

2. <u>Plaintiffs/Intervenors Have A Cognizable Interest</u>.

Rule 24(a) also requires that an intervenor should have a cognizable interest in the litigation. It is clear that Plaintiffs/Intervenors have an obvious and significant interest in this case. Plaintiffs/Intervenors are the tribal entity Wilton Miwok Rancheria, governed by co-chairs Anita Franklin and Mary Tarango, as recognized by the United States Bureau of Indian Affairs ("BIA"), and the sole surviving original distributee and current Rancheria landowner Dorothy Andrews. *See Declaration of Anita Franklin, Co-Chairperson, Wilton Miwok Rancheria in Support of Motion to Intervene*, filed May 29, 2007, ¶ 7; *Declaration of Mary Tarango, Co-Chairperson, Wilton Miwok Rancheria in Support of Motion to Intervene*, filed May 29, 2007, ¶ 7. Plaintiffs/Intervenors and Nominal Plaintiff seek renewed federal recognition of the Tribe. Furthermore, Nominal Plaintiff makes no attempt to claim that Plaintiffs/Intervenors lack a cognizable interest in this case.

3. <u>Plaintiffs/Intervenors' Interests Will Be Impaired If Intervention is Denied</u>.

The third requirement of Rule 24(a) is that possible impairment of the intervenor's interest could occur if intervention is not allowed. As Plaintiffs/Intervenors are currently pursuing their restoration in a similar action pending in the Northern District of California, it is apparent that any related litigation could impede Plaintiffs/Intervenors' efforts to obtain that restoration. Nominal Plaintiff has not rebutted Plaintiffs/Intervenors' assertion that proceeding with this case will impair the Tribe's interest in restoration.

Moreover, Defendant has recognized that this action does not belong in the District of Columbia by moving to transfer the case to the Eastern District of California. Plaintiffs/Intervenors have succeeded in having their action filed in the Northern District of California related to the *Hardwick* litigation, which has been pending in that District since 1979, and in which several similarly situated tribes have obtained federal recognition based on the

same facts alleged in Plaintiffs/Intervenors' complaint filed in this Court. Nominal Plaintiff, while acknowledging that the Tribe was improperly terminated pursuant to the California Rancheria Act, chose not to assert a claim for relief to reverse that improper termination. However, Nominal Plaintiff does recognize the importance of the Rancheria Act, the *Hardwick* litigation and the effect of the same on the Tribe's claims for restoration as indicated by their submission of the report entitled "The Me-Wuk Indian Community of the Wilton Rancheria: A Social, Political, and Community History" (attached to *Opposition* as Exhibit D of the *Declaration of Henry Sangmaster, Chairman of the Me-Wuk Indian Community of the Wilton Rancheria in Support of Plaintiff's Response in Opposition to Proposed Intervenors' Motion to Intervene*, filed June 18, 2007.)

  4.   <u>The Nominal Plaintiff Will Not Adequately Represent Intervenors' Interests.</u>

Finally, the fourth requirement of Rule 24(a) is that the interests of the intervenor will not be adequately represented. Here, the interests of Plaintiffs/Intervenors cannot be adequately represented by Nominal Plaintiff in that Nominal Plaintiff is not authorized to pursue the litigation it has initiated and, by its own admission, failed to assert numerous claims under which federal restoration has been granted to other similarly situated tribes in the Northern District of California. Instead, Nominal Plaintiff has chosen to assert a claim under the Administrative Procedure Act for the Secretary of Interior's failure to list the Tribe on the official list of federally-recognized Tribes, despite the fact that the Tribe was improperly dismissed from the *Hardwick* litigation. Consequently, Nominal Plaintiff's claims fail to assert the most compelling and relevant cause of action available to the plaintiffs, and they will only impair rather than advance Plaintiffs/Intervenors' efforts to obtain restoration.

Furthermore, Nominal Plaintiff has failed to demonstrate that the entity titled "Me-Wuk Indian Community" represents the interests of the Tribe. According to the declaration of Henry

Sangmaster, the Me-Wuk Indian Community is a non-profit organization formed by the Sangmaster family. *See* Sangmaster Declaration, Exhibit C.) Nowhere does Nominal Plaintiff show it is authorized to represent the Tribe. On the contrary, Plaintiffs/Intervenors have provided documentation that the Interim Tribal Council represents the Wilton Miwok Rancheria and is recognized as such by the BIA as recently as September 2006. Plaintiffs/Intervenors also represent the interests of the sole surviving distribute Dorothy Andrews.

Nominal Plaintiff has failed to assert any basis on which the motion to intervene should be denied. Instead, Nominal Plaintiff has chosen to argue that Plaintiffs/Intervenors' seek to enlarge the issues to be litigated. While, as demonstrated below, Plaintiffs/Intervenors have not sought to inappropriately enlarge the scope of this case, it should be noted that such a claim is not sufficient to counter the plain language of Rule 24(a). Thus, as all prerequisites for mandatory intervention under Rule 24(a) have been met, the Court should grant Plaintiffs/Intervenors' application for intervention.

**B.    THE PROPOSED INTERVENTION DOES NOT INAPPROPRIATELY BROADEN THE SCOPE OF THE CURRENT LITIGATION.**

In its Opposition, Nominal Plaintiff devotes considerable attention to *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1 (D.D.C. 2001) (*"Seminole Nation"*) in an effort to demonstrate that Plaintiffs/Intervenors are attempting to expand the scope of the litigation in this case. Such a comparison is wholly inappropriate.

In *Seminole Nation*, a second band of the Seminole Nation, the Freedmen, attempted to intervene in litigation between the Tribe itself and the Department of Interior. In that case, the Court ultimately disallowed intervention because the Freedmen had failed to satisfy the fourth prong for mandatory intervention, which requires that one's interest will not be adequately represented. The Court held that "[b]ecause there is no true likelihood that the DOI will inadequately defend its action, and thus inadequately represent the Freedmen at this stage in the

6

litigation, the Court concludes that the Freedmen are not entitled to intervene in the instant suit as it is narrowly framed." *Seminole Nation of Oklahoma v. Norton, supra,* 206 F.R.D. at 10.

As demonstrated above, the interests of Plaintiffs/Intervenors in this case are unlikely to be adequately represented based upon a number of factors which were not present in *Seminole Nation*. Neither Nominal Plaintiff nor the Defendant has purported to represent the interests of Plaintiffs/Intervenors and Nominal Plaintiff has specifically disavowed the claims and requests for relief made by Plaintiffs/Intervenors. *See Opposition* 5-6.

Even if the Court believes that there is a possibility that the interests of the Plaintiffs/Intervenors may be adequately represented by Nominal Plaintiff, it would be wholly inappropriate to allow such representation in that the Nominal Plaintiff was never authorized to bring this suit in the name of the Tribe or Dorothy Andrews. The Interim Tribal Council of the Wilton Miwok Rancheria has governed the Tribe since November 22, 1999, pursuant to a mediation agreement and is the only governing body currently recognized by the United States. *See Declaration of Anita Franklin, Co-Chairperson, Wilton Miwok Rancheria in Support of Motion to Intervene,* filed May 29, 2007, ¶ 7; *Declaration of Mary Tarango, Co-Chairperson, Wilton Miwok Rancheria in Support of Motion to Intervene,* filed May 29, 2007, ¶ 7. On May 21, 2007, the Interim Tribal Council of the Wilton Miwok Rancheria authorized the filing of a lawsuit in the United States District Court for the Northern District of California to seek federal recognition and the filing of this Motion to Intervene in this action in order to protect the Tribe's interests. *See Franklin Declaration,* ¶ 12; Tarango Declaration, ¶ 12.

1. Allowing Intervention By Plaintiffs/Intervenors Will Not Bring New Matters Before The Court.

Nominal Plaintiff is correct in its assertion that the District of Columbia District Court has a policy of allowing intervening parties to join only on matters presently before the Court. *See Illinois Bell Telephone Co. v. FCC,* 911 F.2d 776, 786 (D.C. Cir. 1990). However, Nominal

7

Plaintiff inappropriately argues that the Court should apply this policy in a manner which would disallow a party from ever asserting any new cause of action or defense or naming any new parties. Such an interpretation stretches the Court's policy to illogical ends.

It is clear from a review of both the Complaint and the Proposed Complaint-in-Intervention that Nominal Plaintiff and Plaintiffs/Intervenors seek restoration of the Tribe. While Nominal Plaintiff assures the Court that these two complaints "have little, if any, commonality" and that "[p]laintiff's Complaint sets forth no cause of action based on the California Rancheria Act", this is an obvious oversimplification of the issues. *Opposition* at 5. In fact, Nominal Plaintiff's first cause of action alleges that "[t]he Secretary [of Interior], acting on behalf of the United States, owes a fiduciary duty to the Tribe because the Tribe's purported termination was not effectuated in conformance with the requirements of the California Rancheria Act." *Complaint*, ¶ 85. It is disingenuous for Nominal Plaintiff to assert that, by basing its claims upon the California Rancheria Act, Plaintiffs/Intervenors have put in issue matters not contemplated by their suit. While Plaintiffs/Intervenors seek to more thoroughly allege violations of the California Rancheria Act, the facts underlying this claim are clearly already at issue in this case. *See Complaint*, ¶ 11-60; *see also* Sangmaster Declaration, Exhibit D.

    2.    <u>Failure To Allow Intervention By Plaintiffs/Intervenors Assures That There Will Be Duplicative Litigation.</u>

In its Opposition, Nominal Plaintiff indicates that allowing intervention in this case will result in duplicative litigation. *Opposition* at 6. However, this contention is unreasonable and contrary to the facts. If the Court disallows intervention, it will ensure that there will be two separate actions in two separate courts in which the same relief, restoration of the Tribe, is sought. This raises the strong possibility that these courts might issue conflicting judgments. Such a result would do nothing to further judicial efficiency.

In the California Action, Judge Fogel has scheduled a Case Management Conference for August 31, 2007, and directed the parties to meet and confer to discuss settlement and other matters prior to filing a status report on August 24, 2007. Second Nyhan Dec., ¶ 4. The California Action is moving forward in any event.

If allowed to intervene, Plaintiffs/Intervenors will seek to have this case transferred to the Northern District of California and related to Plaintiffs/Intervenors current action in that court. Such a result would be much more likely to promote judicial efficiency than disallowing intervention in this case.

### 3. Even If The Court Finds That Plaintiffs/Intervenors Would Expand the Scope of Litigation, The Court Would Still Be Required to Allow Intervention.

Nominal Plaintiff seeks to exclude Plaintiffs/Intervenors from this case on the sole ground that Plaintiffs/Intervenors would broaden the scope of the current litigation. This is not a ground for completely denying Plaintiffs/Intervenors' Motion to Intervene. As demonstrated in Section I above, Plaintiffs/Intervenors clearly have met the prerequisites for intervention under Rule 24(a). Thus, while the Court may certainly limit the scope of this action and Plaintiffs/Intervenors participation in the same, it should allow intervention. Had Nominal Plaintiff wished to completely exclude Plaintiffs/Intervenors from this case, it would have needed to show that any of the four prerequisites for intervention alleged by Plaintiffs/Intervenors have not been established. *See e.g.*, *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 7-8 (D.C. Cir. 1993). Nominal Plaintiff failed to raise any objection to those aforementioned prerequisites.

/ / /

/ / /

/ / /

/ / /

### III.
### CONCLUSION

For the reasons stated above, Plaintiffs/Intervenors request that the Court grant their Motion to Intervene, or in the alternative, set the Motion for hearing, and further request that the Court establish a briefing schedule on Plaintiffs/Intervenors' Motion to Transfer Venue to the Northern District of California.

Dated: June ___, 2007

Respectfully submitted,

**FREDERICKS & PEEBLES LLP**
CHRISTINA V. KAZHE
JOHN NYHAN
ROSE WECKENMANN

By: /s/ John Nyhan
JOHN NYHAN (DC BAR NO. 467082)
Attorneys for Plaintiffs-in-Intervention,
WILTON MIWOK RANCHERIA, a
formerly federally-recognized Indian
Tribe, ITS MEMBERS, and DOROTHY
ANDREWS